THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
BERNARD B. SPINDEL, DEFENDANT-RESPONDENT.

Argued April 29 and May 6, 1957—Decided May 27, 1957.

Mr. *Grover C. Richman, Jr.,* Attorney-General, argued the cause for the State (*Mr. Charles S. Joelson,* Deputy Attorney-General and Acting Passaic County Prosecutor, attorney and of counsel).

Mr. *Russell T. Kerby, Jr.,* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J.   We certified here on our own motion the State's pending appeal to the Appellate Division of the Superior Court from a judgment of the Law Division, Criminal, of the Passaic County Court, entered by the assignment judge, *R. R.* 3 :4–1; 3 :5–5(*b*), dismissing a complaint made under oath September 25, 1956 by an officer of the New Jersey State Police, charging on information and belief that defendant, a resident of New York, "at some time in 1955," in the County of Passaic, in this State, "did unlawfully tap or make a connection with a telephone wire or instrument" of another person to the affiant unknown, "and did take" and "make use of" a "message, communication or a report intended" for another, in contravention of *N. J. S.* 2*A* :146–1.

The complaint was followed by a warrant for the arrest of defendant issued by Judge Colie, then sitting in the Passaic County Court; the arrest was made immediately, and defendant was taken before the Ewing Township [Mercer County] Municipal Court and released in the custody of his counsel for an appearance before Judge Colie in the Passaic County Court on the ensuing September 28. The appearance was made accordingly, and counsel moved for the dismissal of the complaint and the discharge of the accused on the grounds, reduced to writing at a continuance of the hearing held November 9, 1956, (a) that the "arrest and complaint are based upon and were instituted as a result of defendant's answers to questions by a joint investigating committee of the Legislature at a time when defendant was a witness before said body so that such answers were used against defendant in violation of *N. J. S.* 52:13–3," and (b) for want of jurisdiction over the defendant, he "having been arrested at a time when he was exempt from and not subject to arrest as provided in *N. J. S.* 2A:81–21."

*R. S.* 52:13–3 provides that witnesses "summoned" to appear before "any committee" authorized by that article or "any other law" to conduct "an investigation or inquiry" shall be entitled to fees and mileage as in judicial proceedings; and "all witnesses sworn before any such committee shall answer truly all questions put to them which the Committee shall decide to be proper and pertinent to the investigation or inquiry," and for false swearing shall be guilty of perjury; and "No such witness shall be excused from answering any such questions on the ground that to answer the same might or would incriminate him; but no answers made by any witness to any such questions shall be used or admitted in evidence in any proceeding against such witness, except in a criminal prosecution against the witness for perjury in respect to his answers to such questions." And "Any witness who refuses to answer any questions decided by the Committee to be proper and pertinent shall be guilty of a misdemeanor; and any witness who, having been summoned to appear before any such committee, fails to appear in

obedience to the summons, or, appearing, refuses to be sworn shall be guilty of a misdemeanor."

Affidavits were submitted in support of the motion; and a counter affidavit was presented by Deputy Attorney-General Joelson.

The issue thus raised concerns the nature of the appearance and the status of the accused, a nonresident, as a witness before the Joint Legislative Committee to Study Wiretapping and the Unauthorized Recording of Speech. Was he there in response to a committee subpoena served while he was in New Jersey? He testified at a public hearing of the committee held September 25, 1956 that he had made "between 36 and 50" wiretaps in New Jersey during the prior two or three years; the "last installation" in New Jersey, he said, "was around March, 1956," for a "chemical engineering" concern, a manufacturer of "chemical engineering devices," "in a town adjacent to Passaic," the name of which he could not "recall at the moment," all "without the knowledge" of the local police authorities; he identified his employer in a like activity in another New Jersey municipality he could not remember by name, and then he said he considered it "unfair to request a list of [his] clients."

At this hearing, counsel for the legislative committee said, in response to the Attorney-General's inquiry: "No, no subpoena [for the appearance of the accused as a witness] has been issued to my knowledge"; and the Attorney-General points out that although the accused was then on the witness stand, the reply "elicited no word of correction from him." And it is said in argument that "This clearly discloses that neither the defendant, the Committee Chairman, nor the Committee Counsel considered that the defendant's testimony was given in response to a subpoena and indicates that the defendant was not relying on any statutory immunity when testifying."

But the affidavits introduced in support of the motion tend to show that in the Spring of 1956 defendant "met" in New York City with Senator Forbes, the chairman of

the legislative committee, and Mr. Cerny, its legal consultant and, to use the words of counsel, he then and there "indicated that he had some information which he thought would be helpful to the Committee in its studies"; Senator Forbes "requested that defendant testify before the Committee at a future date," and defendant "agreed to comply with this request"; June 26, 1956, "at the Robert Treat Hotel, Newark, New Jersey, Russell T. Kerby, Jr., committee counsel, served a committee subpoena on defendant requiring him to appear at a committee hearing on June 29, 1956, or at any adjourned day, at the Chalfonte-Haddon Hall Hotel, Atlantic City, New Jersey"; June 28, 1956, defendant, "who was serving some subpoenas in Atlantic City for the Committee, telephoned Mr. Kerby in Newark and informed him that he was pursuing some investigations which he thought might lead to wiretapping and eavesdropping information in" New Jersey, and "he would be present at the June 29, 1956 hearing in Atlantic City if those investigations were completed"; at 10 A. M., June 29, 1956, "Senator Forbes, Mr. Cerny, and Mr. Kerby conferred and discussed the absence of defendant from the Committee Hearing room," and "decided and declared that the Committee still desired the benefit of Mr. Spindel's testimony, and that his subpoena should be continued and adjourned from day to day until such time as Mr. Spindel could again be in the State of New Jersey to testify"; on or about September 10, 1956, "Senator Forbes telephoned defendant's attorney and informed him that the defendant would be required to testify at an open hearing of the Committee tentatively set for September 18 or 19, 1956, in Trenton, New Jersey"; a few days later, "defendant telephoned Senator Forbes from Alabama, and Senator Forbes again notified defendant that he would be required to testify at a Committee hearing definitely set for September 25, 1956, in the Assembly Chamber, State House, Trenton, New Jersey," and on September 25, 1956, "defendant came in to the State of New Jersey, pursuant to the Committee subpoena and the direction of the Committee chairman, and gave testimony

under oath before the Committee"; and, continues counsel, "Although a statement was made by Committee counsel to the effect that to his knowledge no subpoena had been served on defendant, defendant did not state that he was not under subpoena."

Deputy Attorney-General Joelson affirmed in his affidavit that at the morning session of the legislative committee on September 26, 1956, Senator Forbes said in his opening statement that the committee "would like to ask Mr. Bernard Spindel if he could demonstrate to us some of the methods of tapping wires"; that Spindel's "only connection with this Committee is that we've heard he has an extensive knowledge in the field of wiretapping and that he has consented to assist the Committee by putting on this demonstration this morning of various ways and means of doing it * * *."

Judge Colie found, 43 *N. J. Super.* 42 (*Law Div.* 1956), that "These two statements are of no weight against the uncontradicted fact that a subpoena was served upon defendant on June 26; that on June 29 the chairman of the committee adjourned the meeting until September 25 and prior to the later date so advised the defendant"; that the complaint upon which the warrant for arrest issued "was based upon, and only upon, the testimony of the defendant when a sworn witness before the committee"; that "we are not here concerned with a situation where the State might base the facts in the complaint on independent testimony other than that of the witness before the committee"; "the State's brief states that 'it should be clearly understood that the State does not represent that it can produce such evidence in this case,' " and so it was that "by utilizing defendant's testimony as the foundation for the complaint," the State has "violated that part of the immunity provision of *N. J. S.* 52:13–3 prohibiting its use in any proceeding against defendant"; and, moreover, defendant "was exempt from arrest by reason of *N. J. S.* 2A:81–21 * * *."

The State denies defendant's claim to the protection of *R. S.* 52:13–3, "since he was not 'summoned to appear' "

before the legislative committee in the statutory sense. The argument is that only a "witness" so "summoned" is secure against the proscribed later adverse use of his testimony; that the affidavits submitted in aid of the motion to dismiss are "vague and evasive," and their "equivocal nature * * * points up the fact that actually the defendant was not under subpoena when he testified," and had he failed to appear "at that time and place," he could not have been charged with a misdemeanor under the act for failure "to appear in obedience to the summons, * * *."

We concur in Judge Colie's findings of fact in this regard. On the assumption of the legislative design propounded by the State, the summoned witness may acknowledge the continued operative force of the served subpoena; and on reason and principle the statutory immunity does not depend upon whether his failure to appear at the time when the testimony was given would have rendered him guilty of a misdemeanor under the act. Compare *State v. Brewster,* 89 *N. J. L.* 658 (*E. & A.* 1916). Compulsive response to the summons is not necessarily precluded by the absence of compulsion in law for deficiency in service or a later loss of efficacy, if the witness believes that the process for his attendance as such has continuing force and so he is moved to respond. It would subvert the outstanding policy of the statute were we to hold that a summons good and sufficient in law and of subsisting authority at the time when the testimony is given is a precondition to the operation of the immunity clause. A correct assessment of the witness' legal responsibility cannot be made determinative of the right, if the statutory purpose is to be effectuated. There is no discernible reason of policy for abstract legalism in evaluating the legislative expression. The reason of the enactment prevails over the literal sense of terms. *Fischer v. Fischer,* 13 *N. J.* 162 (1953); *Wright v. Vogt,* 7 *N. J.* 1 (1951). The manifest policy of a statute is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. *Wene v. Meyner,* 13 *N. J.* 185 (1953). The occasion and necessity of the law, the mischief

felt and the remedy in view are the factors to be considered in the exercise of the interpretive function; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. *Leitner v. Citizens Casualty Co. of New York,* 135 *N. J. L.* 608 (*E. & A.* 1947).

The undoubted reason of the law under review is to render available, in the essential public interest, evidence not otherwise to be had from the particular witness, by refusing to excuse the witness from answering, on the ground of self-incrimination, questions "put to [him]" which the committee shall decide to be "proper and pertinent" to the "investigation or inquiry," but providing that the answers given by the witness shall not be "used or admitted in evidence" in any proceeding against the witness, except in a criminal prosecution for perjury "in respect to his answers to such questions."

We have no occasion now to determine the status in this regard of an unsubpoenaed witness who answers the call of the committee to testify on matters pertinent to the inquiry. The question then would be whether a formal summons to the witness is of vital concern to the policy of the statute. It is to be observed that the first sentence of *R. S.* 52:13–3 has reference to the fees and mileage to be paid to "witnesses summoned"; the second sentence lays the testimonial duty on "all witnesses sworn before any such committee * * *"; and the last paragraph of the section classifies as a misdemeanant (a) the "witness" who refuses to answer questions deemed by the committee to be proper and pertinent; (b) the "summoned" witness who "fails to appear in obedience to the summons, or (c) appearing, refuses to be sworn * * *."

In early times the witness could not be compelled to come; there was no general testimonial duty; indeed, the ordinary witness, such as we now know him, was "not welcomed," in "radical and strict discouragement" of "maintenance"; then came the statute of Elizabeth, in 1562–3, by which a penalty was imposed and a civil action was granted against any person who refused to attend (in civil causes) after

service of process and tender of expenses. *Wigmore on Evidence* (*3d ed., 1940), section* 2190.

And so it came to be a fundamental maxim that the public has a right to every man's evidence. But testimonial duty for the due course of justice is subject to privileges of exemption which at the outset were declared to be exceptional, and "therefore to be discountenanced"; "There must be good reason, plainly shown, for their existence." *Wigmore, section* 2192. Among the exceptions to testimonial compulsion at the common law are the privilege against self-incrimination and immunity from arrest. *Twining v. State of New Jersey,* 211 *U. S.* 78, 29 *S. Ct.* 14, 53 *L. Ed.* 97 (1908); *Bram v. United States,* 168 *U. S.* 532, 18 *S. Ct.* 183, 42 *L. Ed.* 568 (1897); *Wigmore, section* 2250 *et seq.* In the latter regard, "the witness should be encouraged, by the removal of all obstacles, to fulfill [the testimonial duty] freely and promptly; hence, an *immunity from arrest on civil process* is conceded to him, pending his travel to and from the place of trial and his stay at the place." *Wigmore, section* 2195(*g*).

██ The Legislature has the power to compel performance of the testimonial duty in the pursuit of its investigations and inquiries into matters within its cognizance and sphere of action. ˙ *McGrain v. Daugherty,* 273 *U. S.* 135, 47 *S. Ct.* 319, 71 *L. Ed.* 580 (1927); *State v. Brewster, supra; Eggers v. Kenny,* 15 *N. J.* 107 (1954). But in the exercise of the power it must have regard to the privilege against compulsory self-incrimination; and this was the design of *R. S.* 52:13–3. The act obliges the witness so circumstanced to answer questions pertinent to the inquiry but renders the testimony so given inadmissible as evidence in any proceeding against the witness; such is the full extent of the immunity extended by the Legislature. See *N. J. S.* 2A:81–4 *et seq.; In re Vince,* 2 *N. J.* 443 (1949). The given immunity does not include freedom from arrest and prosecution for a criminal offense acknowledged by the witness in the course of his testimony, provable by evidence independent of that adduced from the defendant under the

privileged circumstances; the interdiction is against the use of the testimony thus given in any proceeding against the witness, criminal in nature or, perhaps, otherwise contrary to his interest, a question we are not now called upon to decide. It cannot be that the witness may confess a criminal offense while on the witness stand in the legislative inquiry and thereby secure immunity from prosecution, even though the offense may be established by evidence other than his own so given.

Emphasis is placed on the verb "used," as barring the prosecution itself, however the offense may be proved without resort to the evidence adduced from the defendant. The insistence is that the making of the complaint constituted the "use" of defendant's "answers" here. But the associated words "or admitted in evidence" qualify and clarify the more indefinite term "used," and make certain the legislative end in view. "Or" may be employed as a coordinating conjunction introducing a synonymous word or phrase, or it may join different terms expressing the same thing or idea. *Webster's New International Dictionary* (2 *ed.*). It may be used as a particle to connect two words denoting the same thing. *Oxford English Dictionary*.

The expression is to be given a rational construction in keeping with the essential policy of the act.

And immunity from arrest in the given circumstances is not conferred by *N. J. S.* 2A:81–21, providing that if "a person comes into this state in obedience to a summons directing him to attend and testify in this state," he shall not, "while in this state pursuant to such summons, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons."

This provision was included in *L.* 1941, *c.* 88, entitled "Uniform Act to secure the attendance of witnesses from within or without the State in criminal proceedings." See *R. S.* 2:97–27. The substance of the act of 1941 is now comprised in *N. J. S.* 2A:81–18 through 2A:81–23, as *Article* 6 (of *Subtitle* 9) headed as covering the compulsory

appearance of resident witnesses in "Criminal Prosecutions" in other States and nonresident witnesses in "Criminal Prosecutions" in this State. And *N. J. S.* 2*A* :81–23 provides that the article may be cited as *L.* 1941, *c.* 88 was entitled, *ubi supra,* an act to secure the attendance of witnesses from within or without a state "in criminal proceedings."

*N. J. S.* 2*A* :81–20 provides the mechanism for summoning out-of-state witnesses to testify "in criminal prosecutions, or grand jury investigations commenced or about to commence, in this State"; and *N. J. S.* 2*A* :81–21 renders such witnesses coming into this State in obedience to a summons *ad testificandum* immune from arrest or the service of process while in this State "pursuant to such summons," that is to say, witnesses summoned to testify in a criminal proceeding or grand jury inquiry. *N. J. S.* 2*A* :81–18 defines "witness" within the intendment of the statute to include "a person whose testimony is desired in any proceeding or investigation by a grand jury or in a criminal action, prosecution or proceeding." And the term "summons" in the same section has reference to process for the "appearance of a witness" in proceedings of the stated class.

Moreover, *N. J. S.* 2*A* :81–17 ordains that "a witness shall be privileged from arrest in all civil actions, and no other, during necessary attendance at court or other place, required by subpoena previously duly served * * *." As we have said, this defendant was served in New Jersey.

And it goes without saying that the legislative inquiry here is in no sense a criminal prosecution or proceeding.

█ Thus, defendant was not, by reason of his testimony so given, immune from arrest for crime; the full measure of the statutory privilege is that "no answers * * * to any such questions shall be used or admitted in evidence in any proceeding against" him. Hence, the answers to the questions put cannot be used in proof of the criminal accusation.

We need not now consider whether the personal privilege against compulsory self-incrimination is waived unless invoked by the witness before the question is answered. There

is no contention of waiver here. See *Adams v. State of Maryland,* 347 *U. S.* 179, 74 *S. Ct.* 442, 98 *L. Ed.* 608 (1954); also annotations in 145 *A. L. R.* 1416.

At common law, there is no right to a preliminary hearing on a complaint charging a criminal offense. *R. R.* 3:2–3 provides that if the arrested defendant does not waive examination, the magistrate shall "hear the evidence" within a reasonable time, and "If, from the evidence, it appears to the magistrate that there is probable cause to believe that an offense has been committed and the defendant has committed it, the magistrate shall forthwith bind him over to await final determination of the cause, otherwise, the magistrate shall discharge him." This course was not followed here; affidavits were used in aid of a motion to dismiss the complaint as in disregard of the statutory immunity and thereby to test the validity of the claimed privilege.

The hearing before the magistrate is not a judicial trial of the accused, but rather a judicial inquiry to determine whether there is "probable cause" for the accusation, the nature of which is thereby made known to the accused, to hold the accused to bail if there be such cause and the offense be bailable, otherwise to relieve him of the restraint upon his liberty, and also to perpetuate the testimony available at the time. 14 *Am. Jur.* 934–8. See *State ex rel. Durner v. Huegin,* 110 *Wis.* 189, 85 *N. W.* 1046, 62 *L. R. A.* 700 (*Sup. Ct.* 1901); *Jaffe v. Stone,* 18 *Cal. 2d* 146, 114 *P. 2d* 335, 135 *A. L. R.* 775 (*Sup. Ct.* 1941). And a hearing to this end is now in order, on such evidence as may now be had, save that given by the defendant in the legislative inquiry, privileged under the statute.

The judgment is reversed, and the cause is remanded for a hearing in accordance with these conclusions.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For affirmance*—None.