**The PEOPLE of the State of Colorado, Petitioner,**

**v.**

**Sherman SCHUETT, Respondent.**

**No. 91SC471.**

Supreme Court of Colorado,
En Banc.

July 13, 1992.
Rehearing Denied Aug. 10, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner.

Lowery, Lamb and Lowery, P.C., Philip E. Lowery, Timothy J. Lamb, Denver, for respondent.

Justice QUINN delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *People v. Schuett,*

819 P.2d 1062 (Colo.App.1991), which reversed the conviction of the defendant, Sherman Schuett, for second degree kidnapping and remanded the case for a new trial on that charge. The court of appeals held that the trial court committed plain error when, in response to a jury request during deliberations for a clarifying definition of the statutory term "without lawful justification," it stated that the jury "must give this term the common meaning that the words imply." In support of its holding, the court of appeals reasoned that the term "without lawful justification" is a term of art which means that "the actions of the defendant were committed 'in the pursuit or furtherance of an illegal purpose,'" and concluded that the trial court should have so defined the term for the jury. 819 P.2d at 1066. Because we determine that the trial court's response to the jury request did not constitute plain error, we reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of conviction for second degree kidnapping.

## I.

The defendant was indicted for and convicted of second degree kidnapping,[1] felony theft,[2] and second degree forgery.[3] Because the issues before us relate solely to the defendant's conviction for second degree kidnapping, we summarize the evidence only as it pertains to that offense.

In 1979 the defendant, while employed as an insurance agent, befriended two elderly sisters, Gail Block and Merle Lewis. These sisters, who were widows in their late seventies, owned substantial assets and received trust income of approximately $70,000 annually, as well as income from other assets. The defendant helped the women with financial matters and over the years spent more and more time with them. In 1982 the two sisters purchased a luxury home with a down payment of $70,000, and the defendant and his wife moved into the home and lived with the sisters. During the next several years the defendant managed the sisters' assets and, according to the prosecution's evidence, spent much of the sisters' wealth to support a luxurious lifestyle for himself.

In 1984 Gail Block's mental health deteriorated, and she was placed in a nursing home. Because her nursing-home bills were not being paid, the Jefferson County Department of Social Services in March 1986 petitioned the court for an appointment of a guardian for Gail Block and a conservator for her estate. While these proceedings were pending, the mental health of Merle Lewis also began to deteriorate, and the Department of Social Services became concerned about her welfare. The defendant became apprehensive at this time and stated to a friend that "Jefferson County was after him" and "after the money" and that "he had to get Merle out of the state." In July 1987 the defendant took Merle Lewis to Guadalajara, Mexico, and placed her in a rest home there. The prosecution presented evidence tending to show that the defendant's purpose in moving Merle Lewis to Mexico was to maintain control over her assets. Three doctors, called as prosecution witnesses, testified that Merle Lewis suffered from senility and was incapable of consenting to the move or making a reasonable judgment as to the potential harm from the move. The defendant testified that he moved Merle Lewis to Mexico in order to provide for her own comfort and well-being.

In September 1987, upon learning that Merle Lewis was missing from her home, the Director of the Jefferson County Department of Social Services filed a petition in the Jefferson County District Court to appoint him as her guardian and to appoint a conservator for her estate. The district court appointed the Director as guardian and the Public Administrator as the conservator. Although the defendant was informed that a conservator had been appointed for Merle Lewis, he continued to sign Merle Lewis' name on checks and to

---

1. § 18-3-302(1), 8B C.R.S. (1991 Supp.).

2. § 18-4-401(1)(b), 8B C.R.S. (1986).

3. § 18-5-103(1)(a), 8B C.R.S. (1986).

take cash from her accounts. The prosecution's evidence showed that during the years preceding the appointment of guardians and conservators for the elderly sisters, checks for approximately $1,500,000 had been written on their accounts, most of which were written by the defendant. In November 1987 Jefferson County authorities discovered that Merle Lewis was in Mexico and arranged for her return to Colorado in December of that year.

At the conclusion of the evidence the trial court instructed the jury, without objection from the defendant, on the following elements of second degree kidnapping:

Jury Instruction No. 13

The elements of the crime of kidnapping in the second degree are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. seized and carried any person from one place to another,
5. without that person's consent, and
6. without lawful justification.

During summation the prosecution argued that the defendant acted "without lawful justification" because his purpose in moving Merle Lewis to Mexico was to keep the Jefferson County Department of Social Services "from getting control over Merle and her money." The defense, in summation, did not quarrel with the proposition that the "without lawful justification" element would be satisfied if the defendant moved Merle Lewis to Mexico "so he could end up having her money," but contended that the defendant's purpose in moving her was to provide for her comfort and welfare.

After the jury retired to deliberate, it submitted to the court the following question regarding this instruction:

Re: Jury Instruction No. 13
Please define the term "lawful justification" in part 6.

Are the terms "legal authority" and "lawful justification" synonymous[?] If not, please explain the difference.

The court, without objection by the defendant, answered the jury's question as follows:

The term "without lawful justification" is not defined in the Colorado statutes. Therefore, you must give this term the common meaning that the words imply.

Since the term "legal authority" is not included in Instruction 13, the Court cannot define it for you.

The jury returned a guilty verdict to the charge of second degree kidnapping, and the trial court sentenced the defendant to a term of five years.[4]

The defendant appealed his conviction to the court of appeals. Although the defendant did not raise any issue concerning the trial court's answer to the jury question, the court of appeals on its own motion reversed the judgment of conviction for second degree kidnapping because, in its view, the trial court's failure to provide the jury with a clarifying definition of "without lawful justification" constituted plain error. After remarking that the purpose of the element of "without lawful justification" is "to protect those who have legal authority, based on their relationship to the victim, to seize and carry a person from one place to another" and that the term constitutes a term of art, which is not within the knowledge of ordinary persons, the court of appeals ruled that the jury should have been told that "without legal justification" means that "the actions of the defendant were committed 'in the pursuit or furtherance of an illegal purpose.'" 819 P.2d at 1066. The court then elaborated on its definition by offering the following examples:

Examples of an illegal purpose would be an asportation with intent to commit a sexual assault, ... the violation of a court order, ... or, in this case, if the jury believes the prosecution's theory that placing the victim in the nursing

---

**4.** The trial court also imposed concurrent sentences of five years on the defendant's convictions for felony theft and second degree forgery.

These convictions were affirmed by the court of appeals and are not before us in this proceeding.

home in Mexico was done in pursuance of the commission of a felony, for the purpose of gaining greater or easier access to deprive her of her money. 819 P.2d at 1066 (citations omitted).

We thereafter granted the People's petition for certiorari to consider whether the court of appeals properly defined the term "without lawful justification" for purposes of second degree kidnapping and also whether the trial court committed plain error in failing to offer the jury the same or a similar definition of the term.

## II.

We first address whether the court of appeals correctly held that the term "without lawful justification" means that the defendant's actions must be "in the pursuit or furtherance of an illegal purpose." In challenging the court of appeals' reversal of the judgment of conviction, the People assert that the term "without lawful justification" has a commonly understood meaning—that is, without lawful or legitimate authority—and, hence, any further explanation of the term is unnecessary. The defendant, in contrast, argues that the term "without lawful justification" does not have a common meaning and that the trial court had the duty to clarify the term for the jury. For reasons hereinafter discussed, we disapprove of the court of appeals' definition of "without lawful justification."

## A.

■■■ A court's primary task in construing a statute is to ascertain and give effect to legislative intent. *People v. Guenther*, 740 P.2d 971, 975 (Colo.1987); *People v. District Court*, 713 P.2d 918, 921 (Colo. 1986). A statute should be given that construction which will permit, if at all feasible, the accomplishment of the statutory objective in proscribing certain conduct as criminal. To ascertain legislative intent, we look first to the language of the statute itself with a view toward giving the statutory language its commonly accepted and understood meaning. *Guenther*, 740 P.2d at 975; *Binkley v. People*, 716 P.2d 1111,

1113–14 (Colo.1986); *People v. District Court*, 713 P.2d at 921.

■■ Section 18–3–302(1), 8B C.R.S. (1991 Supp.), states that "[a]ny person who knowingly seizes and carries any person from one place to another, without [that person's] consent and without lawful justification, commits second degree kidnapping." The term "without lawful justification" is not defined in the statutory proscription of kidnapping, and we agree with the court of appeals that this element of the crime serves to protect persons who may have legal authority, based on their relationship to a particular person, to move that person from one place to another, with or without the person's consent. It is quite another matter to hold, as did the court of appeals, that the term "without lawful justification" requires that the offender act in the pursuit or furtherance of some illegal purpose ulterior to the proscribed conduct of seizing and transporting the nonconsenting victim from one place to another.

We are satisfied that the term "without lawful justification" is not a "term of art" or highly technical concept which is apt to be misunderstood in the absence of a further clarifying definition. The commonly accepted meaning of the verb "justify" is to show something to be just, reasonable, or valid. *See generally Webster's Third New International Dictionary* 1228 (1986). The noun "justification" obviously refers to the act or process of showing something to be justified. *Id.* The generally understood meaning of the adjective "lawful" is in accordance with the law or legitimate. *Id.* at 1279. What these definitions serve to illustrate is that the term "without lawful justification" is such a basic concept that the use of explanatory synonyms add little, if anything, to the central core of meaning inherent in the term itself. In the context of the crime of second degree kidnapping, therefore, the term "without lawful justification" simply means an act not authorized or permitted by law—in other words, an act performed without lawful authority. *See generally Black's Law Dictionary* 865 (6th ed. 1990). There is no basis, in our view, for import-

ing into the term the notion of acting in pursuit or in furtherance of some illegal purpose ulterior to the other conduct specifically prohibited by section 18–3–302(1).

### B.

We find support for our construction of the term "without lawful justification" in the legislative history antedating the enactment of section 18–3–302(1). The term "without lawful justification" appears in the 1971 version of second degree kidnapping that was enacted as part of the Colorado Criminal Code. 1963 C.R.S. § 40–3–302 (1971 Cum.Supp.). The comment to the statutory definitions of first and second degree kidnapping states that the definitions are taken from a 1964 Legislative Council Committee Report to the General Assembly entitled "Preliminary Revision of Colorado Criminal Laws" (Research Publication No. 98) (1964 Report). The Legislative Council Committee was formed pursuant to a House Joint Resolution and was directed to study Colorado criminal statutes. The 1964 Report classified various forms of kidnapping into false imprisonment, simple kidnapping, and aggravated kidnapping. False imprisonment was defined as intentionally confining or detaining another "without the other's consent and *without proper legal authority." Id.* at 18 (emphasis added). What is now known as second degree kidnapping was referred to in the 1964 Report as "simple kidnap[p]ing" and, as relevant here, was defined as intentionally and forcibly seizing and carrying any person "from one place to another without his consent and *without lawful justification." Id.* (emphasis added). The committee comment to the "simple kidnap[p]ing" statute explained that "simple kidnap[p]ing is aggravated false imprisonment" and requires "confinement or restraint without consent and *without*

*proper legal authority* plus some aggravating factor." *Id.* The comment further noted that the offender "need not have a special motive to kidnap, with the exception of extorting ransom," *id.,* which was included as an element of the more serious crime of aggravated kidnapping.[5] Two propositions can reasonably be inferred from this comment: (1) the Legislative Council Committee considered the term "without lawful justification" to be synonymous with "without proper legal authority"; and (2) a person committing the offense of "simple kidnap[p]ing" need not have a special motive or purpose in seizing and carrying any person from one place to another. These propositions serve to reinforce our determination that the statutory element of "without lawful justification" in section 18–3–302(1) means nothing more than acting in a manner not authorized or permitted by law—in other words, acting without lawful authority—and, contrary to the court of appeals' analysis, does not connote some additional illegal purpose ulterior to the act of seizing and transporting the nonconsenting victim from one place to another.

### C.

Finally, we must be mindful of the effects of a particular construction of a statute. *See, e.g., People v. District Court,* 713 P.2d at 921; *Tacorante v. People,* 624 P.2d 1324, 1330 (Colo.1981). To adopt the court of appeals' construction of the term "without lawful justification" would result in improperly transforming the crime of second degree kidnapping into the substantive equivalent of a specific intent offense by requiring not only that the offender knowingly seize and carry the nonconsenting victim from one place to another, but also that the offender engage in that conduct with the purpose of pursuing

---

**5.** The 1964 report defined aggravated kidnapping as follows:

40–3–3. *Aggravated kidnap[p]ing.*
(1) Any person who does any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of value in order to secure a release of the person under the offender's actual or ap-

parent control commits aggravated kidnap[p]ing:
(a) Forcibly seizes and carries any person from one place to another; or
(b) Entices or persuades any person to go from one place to another; or
(c) Imprisons or forcibly secretes any person.

or furthering some ulterior illegal objective.

The requisite culpable mental state for second degree kidnapping is "knowingly." § 18–3–302(1), 8B C.R.S. (1991 Supp.). An offender acts knowingly when he is aware that his conduct is of such a nature, that a particular circumstance exists, or that his conduct is practically certain to cause a certain result. § 18–1–501(6), 8B C.R.S. (1986). The General Assembly has declared that all offenses defined in the Colorado Criminal Code in which the mental culpability requirement is expressed as "knowingly" are "general intent crimes." *Id.* A specific intent offense, in contrast, is defined by the mental culpability requirement of "intentionally" or "with intent." § 8–1–501(5), 8B C.R.S. (1986). A person acts "intentionally" or "with intent" when his conscious objective is to cause the specific result proscribed by the statute defining the offense. *Id.*

If the General Assembly intended the crime of second degree kidnapping to require purposeful conduct calculated to achieve an illegal objective ulterior to the seizing and carrying of a nonconsenting victim from one place to another, we may reasonably assume that it would have defined the crime in terms of the requisite specific intent, as it has done so in other specific intent offenses proscribed by the Colorado Criminal Code. *See, e.g.,* § 18–3–102(1)(a), 8B C.R.S. (1986) (first degree murder defined in terms of "with intent to cause the death of a person"); § 18–3–202(1)(a), 8B C.R.S. (1986) (first degree assault defined in terms of "with intent to cause serious bodily injury"); § 18–3–301(1), 8B C.R.S. (1986) (first degree kidnapping defined in terms of "with intent thereby to force the victim or any other person to make any concession or to give up anything of value"); § 18–4–202(1), 8B C.R.S. (1986) (first degree burglary defined in terms of knowingly entering or remaining unlawfully in building or occupied structure "with intent to commit therein a crime"); § 18–4–302(1)(a), 8B C.R.S. (1986) (aggravated robbery defined in terms of "with intent, if resisted, to kill, maim, or wound the person robbed or any other per-son"); § 18–4–401(1)(a), 8B C.R.S. (1986) (theft defined in terms of intent to deprive other person permanently of use or benefit of thing of value); § 18–5–102(1), 8B C.R.S. (1986) (first degree forgery defined in terms of "with intent to defraud"); § 18–8–105(1), 8B C.R.S. (1986) (accessory to crime defined in terms of intent to hinder, delay, or prevent discovery, detection, apprehension, prosecution, conviction, or punishment of another for commission of a crime). There is no suggestion in the statutory definition of second degree kidnapping that the General Assembly intended the crime of second degree kidnapping to be other than a general intent crime. We conclude, therefore, that the court of appeals erred in its construction of the term "without lawful justification" in section 18–3–302(1).

### III.

We turn then to the question whether the trial court committed plain error by failing to provide the jury with a clarifying definition of "without lawful justification." We are satisfied that no plain error occurred in this case.

A defect in trial proceedings to which a defendant fails to make a contemporaneous objection will not constitute a basis for reversal unless the error affects the substantial rights of the defendant. Crim.P. 52(b). Before a conviction is reversed on the basis of plain error, an appellate court must be able to say with fair assurance that, after reviewing the entire record, "the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 419–20 (Colo.1987).

In *Leonardo v. People,* 728 P.2d 1252 (Colo.1986), we held that if the jury, after retiring for deliberation, desires to be informed on some point of law, the trial court should give appropriate additional instructions in response to the jury's request unless "the jury may be adequately informed by directing their attention to some portion of the original instructions." *Id.* at 1255 (quoting *ABA Standards for Criminal*

**50**

*Justice,* Standard 15–4.3(a) (2d ed. 1980)). In the instant case, the jury asked the court whether "legal authority" and "legal justification" are synonymous. Our previous discussion of the term "without lawful justification" demonstrates that the General Assembly used that term in the sense of "without lawful or legal authority" to seize and carry a nonconsenting victim from one place to another. The trial court, however, did not have the benefit of our opinion in this case when it responded to the jury's request. While ideally the trial court might have answered the jury's request in the affirmative, we are satisfied that the court's response did not rise to the level of plain error.

We reach this conclusion because the court told the jury to give the term "without legal justification" "the common meaning that the words imply." As previously discussed, the common meaning implied by that term is an act not authorized or permitted by law or, stated otherwise, an act performed without lawful or legal authority. It is reasonable to assume that the jury heeded the trial court's response and construed the term in accordance with its common meaning.

There is abundant evidence in the record to support a finding that the defendant's act in transporting Merle Lewis from Colorado to Mexico satisfied the common meaning of "without legal justification." When the trial court's response is measured against the standard of plain error and is viewed in the context of the entire record, we cannot say that the court's failure to provide the jury with an explicit definition of the term "without lawful justification" so undermined the basic fairness of the trial itself as to cast serious doubt on the reliability of the defendant's conviction for second degree kidnapping.

We reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of conviction for second degree kidnapping.