**PEOPLE of the State of Colorado, Petitioner,**

v.

**Robert SWAIN, Respondent.**

**No. 97SC16.**

Supreme Court of Colorado, En Banc.

May 26, 1998.

Sarah F. Law, District Attorney, Sixth Judicial District, Paul J. Schmidt, Deputy District Attorney, Durango, for Petitioner.

Richard D. Unruh, Telluride, M. Colin Bresee, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the La Plata County District Court's order in *People v. Swain,* No. 96CR152 (Colo.Dist.Ct. Dec. 9, 1996).[1] The district court reversed Robert Swain's convictions for driving while ability impaired (DWAI) and driving without a driv-

---

1. The issue for certiorari was stated as follows: Whether a person in actual physical control of a motor vehicle is "driving" for purposes of Colorado's driving under the influence statute, section 42–4–1301(1), 17 C.R.S. (1996 Supp.).

er's license and remanded for a new trial to the La Plata County Court. The district court concluded that the county court erroneously instructed the jury that the term "drove," within the meaning of section 42-4-1301(1), 17 C.R.S. (1996 Supp.), is defined as "actual physical control" of a vehicle.[2] Based on our analysis in *Brewer v. Motor Vehicle Division, Department of Revenue*, 720 P.2d 564 (Colo.1986), we hold that proof of "actual physical control" of a vehicle is sufficient to establish that Swain "drove" a vehicle within the meaning of section 42-4-1301(1). Accordingly, we reverse the decision of the district court and remand the case to the district court with directions to reinstate the judgments of conviction and sentences imposed for DWAI and driving without a driver's license.

### I.

On the evening of September 13, 1995, Swain met some friends in Durango, Colorado for dinner. The meal lasted approximately one hour, during which Swain consumed two beers. After dinner, Swain and his friends walked around downtown Durango to see if "there was anything happening." They agreed to have a beer at a bar located on Main Street and upon their arrival, ordered beers and began to drink. Sometime between 9:00 and 10:00 p.m., Swain and his friends decided to leave the bar because they were being soaked by thrown beer. As Swain and his friends resumed walking around downtown Durango, Swain felt tired and informed his friends that he had to drive to New Mexico that night because he had a "get together" with friends in Farmington the following day.

At approximately 10:30 p.m., Swain got into his white pick-up truck and proceeded to drive out of Durango. Some time later, Swain got lost and had to backtrack to Hesperus, Colorado in order to find Highway 140 to Farmington. At an unknown time during the night of September 13, 1995, or the early morning of September 14, 1995, Swain felt sleepy, pulled his pick-up truck over to the southbound side of Highway 140, and fell asleep.[3]

On September 14, 1995, at approximately 2:00 a.m., La Plata County Sheriff's Deputies Todd Hitti and Shelly Williams noticed a white pick-up truck parked one to three feet off of Highway 140 in the grass. Deputy Hitti pulled the patrol car over to the side of the highway and radioed central dispatch that they were investigating an "abandoned vehicle." As the deputies exited their patrol car, they both heard loud music coming from the truck.

The deputies approached the truck and found Swain lying, either asleep or passed out, in the front seat. Swain was curled in a fetal position with his feet near the driver's side door and his head resting towards the passenger's side door. The keys were in the ignition and the truck's radio was playing.[4] The engine was not running and no evidence was introduced concerning whether the truck's headlights were on.

Deputy Hitti knocked on the window of the truck three times before Swain responded. Swain sat up, wiped his face, and rolled down the window. Deputy Hitti requested Swain's vehicle registration, driver's license, and proof of insurance. After fumbling through some leaflets, Swain was able to produce his proof of insurance but informed Deputy Hitti that he was unable to locate his driver's license and vehicle registration. Both deputies smelled an odor of alcohol on Swain's breath, noticed that his speech was slow and slurred, his eyes were bloodshot, and his

---

**2.** This opinion refers to the terms "drive" and "drove" as elements of the DUI and DWAI offenses. Section 42-4-1301(1)(a)-(b), 11 C.R.S. (1997), states that it is illegal for a person to "drive" a vehicle while under the influence or while impaired by the use of alcohol, drugs, or both. Section 42-4-1301(1)(h)-(i), 11 C.R.S. (1997), permits the use of the term "drove" in charging one with DUI or DWAI. Accordingly, for purposes of this opinion, the terms are synonymous.

**3.** The defendant testified that he had only drank two and a half beers that evening because in his past experiences, if he drank more than three beers, he would "go to sleep."

**4.** No evidence was presented as to whether the ignition switch was in the "on," "auxiliary," or "off" position.

clothes were dirty and in disorder. The deputies also observed a twelve-pack of beer on the floor of the truck, with two cans opened.

Swain told Deputy Hitti that he was on his way to Farmington from Norwood, Colorado, and that he had been drinking earlier in Durango. After providing his proof of insurance to Deputy Hitti, Swain lay back down on the seat. Deputy Hitti returned to the patrol car and radioed central dispatch to check for any outstanding warrants. As the deputies were waiting for the results of the warrants check, they conducted a DUI investigation. Swain failed a number of voluntary roadside sobriety tests and refused to submit to any form of chemical testing. Consequently, Swain was arrested and charged with driving under the influence of alcohol pursuant to section 42–4–1301(1)(a), 11 C.R.S. (1997),[5] and driving without a driver's license pursuant to section 42–2–101(5), 11 C.R.S. (1997).[6]

The case proceeded to jury trial on May 23, 1996, in La Plata County Court. At the close of all evidence, the People submitted the following jury instruction, over the objection of Swain, based upon case law applicable to the express consent provisions of section 42–4–1301(7)(a), 11 C.R.S. (1997): [7]

> In Colorado, a person "drove" if he or she was in actual physical control of a motor vehicle.

> "Actual Physical Control" is present when a person exercises bodily influence or direction over a motor vehicle; which is

to be decided by a totality of the circumstances.

> Factors you may consider in deciding whether or not a person was in actual physical control of a motor vehicle, include, but are not limited to the following:
> A. Where the vehicle was found;
> B. Where in the vehicle the person was found;
> C. Whether or not the keys were in the motor vehicle's ignition;
> D. Whether or not the motor vehicle was running;
> E. Any other factor which tends to indicate that the person exercised bodily influence or direction over a motor vehicle or not based on your every day experience.

> No one factor listed above definitively decides whether or not a person was in actual physical control of a motor vehicle.

The jury found Swain guilty of DWAI,[8] a lesser included offense of DUI, and driving without a driver's license. The trial judge sentenced Swain to ten days in the La Plata County Jail, and suspended the sentence on the condition that Swain pay $388.00 in fines and court costs, complete twenty-four hours of useful public service, obtain a drug/alcohol evaluation, and follow all treatment recommendations.

On appeal to the La Plata County District Court, Swain asserted in his notice of appeal that the trial court erroneously instructed the jury that "drove," an element of DUI,

---

5. Section 42–4–1301(1)(a) provides in pertinent part:
   It is a misdemeanor for any person who is under the influence of alcohol or one or more drugs, or a combination of alcohol and one or more drugs, to drive a vehicle in this state.

6. Section 42–2–101(5) provides in pertinent part:
   No person ... shall operate a motor vehicle upon a highway in this state without having such license or permit in such person's immediate possession.

7. *See Caple v. Department of Revenue*, 804 P.2d 873 (Colo.App.1990); *Motor Vehicle Div. v. Warman*, 763 P.2d 558 (Colo.1988); *Colorado Div. of Revenue v. Lounsbury*, 743 P.2d 23 (Colo.1987); *Brewer*, 720 P.2d 564 (Colo.1986). Section 42–4–1301(7)(a), 11 C.R.S. (1997), provides, in pertinent part:

(I) [A]ny person who drives any motor vehicle ... throughout this state shall be deemed to have expressed such person's consent to ... (II) the taking and completing of, any test or tests of such person's breath or blood for the purpose of determining the alcoholic content ... when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle [under the influence or while impaired by the use of alcohol, drugs, or both].

8. Section 42–4–1301(1)(b), 11 C.R.S. (1997), provides, in pertinent part:

It is a misdemeanor for anybody who is impaired by alcohol or by one or more drugs, or by a combination of alcohol and one or more drugs, to drive any vehicle in this state.

meant "actual physical control."[9] Without the benefit of briefs from either party, the district court ruled that the definition of "drove" as "actual physical control" of a vehicle is a civil concept applicable to driver's license revocation cases only and not criminal prosecutions. The court observed that "[w]hile the express consent law may apply to anyone who is a driver, the criminal inquiry is 'did the defendant drive a motor vehicle' not 'did the defendant have the status of "driver." '" The district court concluded that the Colorado DUI statute only criminalizes the act of "driving" a vehicle under the influence and therefore "some movement of the vehicle is generally required." The district court reversed both convictions and remanded the cause for a new trial.

## II.

The People contend that the district court erroneously relied on a civil/criminal law distinction in concluding that this court's analysis in *Brewer v. Motor Vehicle Division, Department of Revenue*, 720 P.2d 564 (Colo. 1986), was inapplicable to the DUI context.[10] According to the People, the term "driver," as defined in section 42-1-102(27), applies to both the civil and criminal portions of Title 42. Therefore, the People contend that the district court's conclusion that the term "drove" requires "some movement of the vehicle," is erroneous, and that the term instead requires "actual physical control" of a vehicle. We agree.

---

**9.** Although Swain filed a timely notice of appeal, he did not file an opening brief with the district court.

**10.** The district court relied on *People v. Wood*, 767 P.2d 790 (Colo.App.1988), a case involving a criminal conviction of a defendant for driving while his driver's license was revoked, to support its criminal/civil distinction. In *Wood*, the court of appeals reversed Wood's conviction, holding that the defendant, who was prohibited by an order revoking his driver's license from driving on a public highway, could not be convicted of driving while his driver's license was revoked because he was driving in a private parking lot. *See id.* at 791–92.

In dicta, the court of appeals discussed the legislature's newly-expanded definition of "driver," to include all drivers in the state. *See id.* at

Title 42, Part 13 of Article 4 sets forth vehicle and traffic regulations involving alcohol and drug offenses. In Colorado, it is a misdemeanor for a person to "drive" a vehicle while under the influence or while impaired by the use of alcohol, drugs, or both. *See* 42-4-1301(1)(a)–(b), 11 C.R.S. (1997) ("DUI statute"). By enacting this legislation, the General Assembly sought to foster public safety by discouraging individuals from driving while under the influence of alcohol. *See Noe v. Dolan*, 197 Colo. 32, 37, 589 P.2d 483, 486 (1979) (recognizing that "the health, safety and welfare of [citizens] . . . are endangered by those who drive while under the influence of intoxicating liquors"); *see also People v. Rister*, 803 P.2d 483, 487 (Colo.1990) (recognizing that "[i]t is beyond debate that drunken driving is a serious problem, and that the state has a substantial interest in preventing the loss of life and damage to property caused by drunk drivers").

In construing a statute, the intent of the legislature is to be ascertained and given effect whenever possible. *See Walgreen Co. v. Charnes*, 819 P.2d 1039, 1044 (Colo.1991). The General Assembly may furnish its own definitions of words and phrases in order to guide and direct judicial determination of the intendments of the legislation although such definitions may differ from ordinary usage. If the General Assembly has defined a statutory term, a court must apply that definition. *See R.E.N. v. City of Colo. Springs*, 823 P.2d 1359, 1364 (Colo.

792 (discussing the definition of "driver" contained in section 42-1-102(22), which was later relocated to section 42-1-102(27)). In dismissing the amended definition as irrelevant to its holding, the court of appeals stated that "[a]s to the offense at issue here, the pertinent inquiry [still] concerns whether defendant was driving or operating a vehicle, rather than whether he had the status of being a driver." *Wood*, 767 P.2d at 792. This discussion was unnecessary to the court's holding, which was based on the notion that Wood could not be charged with driving on the highways of the state when he was only observed driving in a private parking lot. *See id.* at 791–92. Furthermore, Wood admitted that he was driving at the time of the alleged offense. *See id.* at 791. However, to the extent that the court of appeals' opinion relied on the distinction between "driving" and "driver" to reach its conclusion, it is overruled.

1992) (recognizing that "[w]hen the legislature defines a term in a statute, statutory construction requires that the term be given its statutory meaning"); *see also* Norman J. Singer, *Sutherland Statutory Construction* 47.07 (5th ed. 1992) ("As a rule, a definition which declares what a term means is binding on the court.").

■ Although the terms "drive" and "drove" are not statutorily defined in Title 42, a "driver" is defined by section 42–1–102(27) as a person "who drives or is in actual physical control of a vehicle." 42–1–102(27), 11 C.R.S. (1997). Relying on our prior decision in *Brewer*, the People assert that it logically follows that the term "drove," an element of the criminal DUI statute, means being in "actual physical control" of a vehicle. *See* 42–4–1301(1), 11 C.R.S. (1997).

In *Brewer*, we examined the meaning of the term "drove" in the context of a driver's license revocation proceeding under Colorado's express consent statute. *See* 42–2–122.1(1)(a), 17 C.R.S. (1984).[11] We held that an intoxicated person found asleep behind the wheel of a car parked in the middle of a street with the engine running and lights on was "driving" a vehicle and was therefore subject to license revocation proceedings for driving while intoxicated. In reaching our decision, we applied the definition of the term "driver" contained in section 42–1–102(27) to the term "drove" in section 42–2–122.1. *See Brewer*, 720 P.2d at 566–67. We determined that a person who exercised "actual physical control" over a motor vehicle "drove" the vehicle within the meaning of the express consent statute. *See id.* at 567; *see also Warman*, 763 P.2d at 561–62 (intoxicated operator found asleep or unconscious be-

hind the wheel of a stopped vehicle, with engine running and lights on, had actual physical control of the vehicle); *Smith v. Charnes*, 728 P.2d 1287, 1292 (Colo.1986) (same).

Generally, "ambiguity" exists when a statute is susceptible to alternate constructions. *See Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298, 1302 (Colo.1996) (recognizing that "statutory language is ambiguous and therefore susceptible of alternate constructions"). Although *Brewer* did not expressly conclude that the phrase "drove a vehicle" was ambiguous, it did recognize that "other constructions of the phrase 'drove a vehicle' may be equally plausible." *See Brewer*, 720 P.2d at 567. Despite this recognition, *Brewer* resolved the definition of the term "drove" for purposes of the DUI statute. *See id.* ("Proof of ... actual physical control was sufficient to establish that the plaintiff drove."). In so doing, *Brewer* also implicitly interpreted the terms "driving" and "actual physical control" as synonymous.[12] *See id.* at 566–67.

■ In the twelve years since *Brewer* was decided, the General Assembly has revisited section 42–4–1301 on three separate occasions, but has neither altered the language nor indicated in any other manner that our analysis in *Brewer* is contrary to legislative intent. *See* Ch. 256, sec. 12, 42–4–1301, 1997 Colo. Sess. Laws 1467–68((2)(a.5) added and (6) and (8) amended); Ch. 199, sec. 17, 42–4–1301, 1995 Colo. Sess. Laws 956–58, ((9)(a) and (9)(b) amended); Ch. 337, sec. 1, 42–4–1301, 1994 Colo. Sess. Laws 2376–2390 (amended and entire title relocated). Under an established rule of statutory construction, the legislature is presumed, by virtue of its

---

**11.** This statute was revised and relocated to section 42–2–126(2)(a)(I), 11 C.R.S. (1997), and provides, in pertinent part:

The Department shall revoke the license of any person upon its determination that the person: Drove a vehicle in this state when the amount of alcohol, as shown by analysis of the person's blood or breath [was over the specified legal limit].

**12.** We note that the word "or" appears between the terms "driving" and "actual physical control." *See* 42–1–102(27), 11 C.R.S. (1997). Generally, the word "or" is a disjunctive particle that

denotes an alternative; however, the word "or" may also be utilized as a "coordinate conjunction introducing a synonymous word or phrase or it may join different terms expressing the same idea or thing and it may be used as a particle to connect two words meaning the same thing." *State v. Ramsey*, 311 S.C. 555, 430 S.E.2d 511, 514 (1993); *Martin v. Carolina Water Serv., Inc.*, 280 S.C. 235, 312 S.E.2d 556, 558 (1984); *see also State v. Spindel*, 24 N.J. 395, 132 A.2d 291 (1957); *Bowles v. Weiner*, 6 F.R.D. 540 (E.D.Mich.1947); *Blumenthal v. Berkshire Life Ins. Co.*, 134 Mich. 216, 96 N.W. 17 (1903).

action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction. *See Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."); *Tompkins v. De-Leon,* 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) ("When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute."). We can therefore reasonably presume that the legislature agrees with *Brewer*'s construction of the term "drove" to mean "actual physical control." Our analysis in *Brewer* thus compels the conclusion that the General Assembly defined the term "drive" for purposes of the DUI statute to mean "actual physical control" of a vehicle.[13]

██ We are mindful of the general proposition that "criminal statutes are to be strictly construed in favor of a defendant." *People v. Hale,* 654 P.2d 849, 850 (Colo.1982). However, courts may not rely on this rule of lenity if no ambiguity exists in a statutory scheme defining a substantive criminal offense. *See People v. Leske,* 1998 WL 177969, at * 9 (Colo. Apr.13, 1998); *see also Wilczynski v. People,* 891 P.2d 998, 1001 (Colo.1995) (use of rule of lenity for statutory construction is inappropriate absent statutory ambiguity); *People v. Harris,* 914 P.2d 425, 430 (Colo.App.1995) ("The rule of lenity may be employed only to resolve an unyielding statutory ambiguity, not to create one.").

Here, because of *Brewer*'s judicial construction of the term "drove" to mean "actual physical control" and the legislature's subsequent *sub silentio* affirmation, no ambiguity exists in the statute regarding the definition of the term "drove." Accordingly, the rule of lenity is not applicable and cannot be the basis for reaching a result different from *Brewer.*

We therefore hold that the term "drive" in section 42–4–1301 means "actual physical control" of a vehicle.[14]

### III.

In sum, we hold that section 42–4–1301 makes it unlawful for any person under the influence or while impaired by the use of alcohol, drugs, or both to be in "actual physical control" of a vehicle. Accordingly, the judgment of the district court is reversed, and the cause is remanded to the district court with directions to reinstate the judgments of conviction and sentences imposed for DWAI and driving without a driver's license.

BENDER, J., dissents, and SCOTT, J., joins in the dissent.

BENDER, Justice, dissenting:

The majority reinstates Swain's conviction, holding that the trial court's jury instruction defining "driving" as the "actual physical control of a vehicle" was appropriate. In my view, the plain and ordinary meaning of the word "driving" connotes movement, thus, the act of "driving" is not the same as being in "actual physical control of a vehicle." I would affirm the district court's holding that the conviction must be reversed. Hence, I respectfully dissent.

---

**13.** We recognize that Colorado commentators rely on *Brewer* and its progeny to define the term "driving" within the Colorado DUI criminal context as "actual physical control." *See* Alexander G. Topakas, *A Young Lawyer's Guide to DUI Suppression Motions,* 25 Colo. Law. 63 (April 1996) (" 'Driving' is defined as actual physical control of a motor vehicle"); Scotty P. Krob, *Pretrial Motions to Suppress or Dismiss, Colorado DUI Bench Book* III, 18–20 (Pat Furman Ed., 1995) ("A defendant is deemed to be 'driving' a motor vehicle under the DUI statute whenever he is in actual physical control of the vehicle, regardless of whether the vehicle is on a public highway and regardless of whether the vehicle is actually moving or moving under its own power"); *see also* Colorado District Attorneys Council, *DUI/DWAI Manual: A Guidebook for Colorado Prosecutors* 6: 3–4 (1990).

**14.** The jury determined, pursuant to instructions, that Swain was in actual physical control of the vehicle. We have not been asked to review the sufficiency of the evidence supporting that determination. We, therefore, do not express an opinion as to whether Swain exercised "actual physical control" of a vehicle for purposes of the DUI statute.

## I.

Swain was charged with driving under the influence (DUI), and was convicted of the lesser included offense of driving while ability impaired (DWAI). Both of these crimes require the element of "driving a vehicle."[1] The question presented in this case is the meaning of "driving" in the context of these statutes.

For guidance, I turn to established principles of statutory construction. Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. We first look to the statutory language and give words and phrases their plain and ordinary meaning. *See People v. Shinaut,* 940 P.2d 380, 382 (Colo.1997). If the language of the statute is clear and unambiguous, there is no need to use other principles of statutory construction. *See People v. District Court,* 713 P.2d 918, 921 (Colo.1986).

When a statute is ambiguous, the court must look beyond the plain language of the statute. *See Mason v. People,* 932 P.2d 1377, 1380 (Colo.1997). However, interpretations that render statutory provisions superfluous should be avoided. *See Dawson v. Reider,* 872 P.2d 212, 221 (Colo.1994); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.02 (5th ed.1992). The court should adopt an interpretation that gives consistent, harmonious, and sensible effect to all of the statute's provisions. *See Adams County Sch. Dist. v. Dickey,* 791 P.2d 688, 691 (Colo.1990). In addition, the court must be mindful of the effects of its interpretation, *see People v. Schuett,* 833 P.2d 44, 48 (Colo.1992), and should avoid statutory constructions that lead to absurd results, *see Regional Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996).

When interpreting an ambiguous statute concerning a criminal offense, the rule of lenity requires that the statute be strictly construed in favor of the defendant. *See People v. Forgey,* 770 P.2d 781, 783 (Colo. 1989). In addition, the judiciary must defer to the legislature's exclusive authority to define criminal conduct. *See People v. Rodriguez,* 914 P.2d 230, 287 (Colo.1996).

## II.

Applying these principles to this case, Title 42 does not define the word "driving." Thus, we look to the word's plain and ordinary meaning. *Webster's Third New International Dictionary* 692 (1986) defines "drive" as follows: "To set and keep in motion or in action through application of some amount of force: ... to guide a vehicle along or through." "Driving" is commonly understood to involve movement. Other jurisdictions have adopted this definition. For example, in *Mercer v. Department of Motor Vehicles,* 53 Cal.3d 753, 280 Cal.Rptr. 745, 809 P.2d 404, 410 (1991), the court stated:

In everyday usage the phrase, "to drive a vehicle," is understood as requiring evidence of volitional movement of a vehicle. Numerous dictionary definitions ... support a definition of "drive" that includes movement.... We believe these definitions are consistent with the usual and ordinary understanding of that term.

The familiar and generally accepted meaning of the word "driving" requires movement, hence, I believe that this court should require movement in the legal definition of this word. I disagree with the majority's conclusion that "driving" does not require movement and only requires "actual physical control" of the vehicle.

Because I would hold that the word "driving" as it appears in section 42–4–1301(1) is

---

**1.** The DUI statute, section 42–4–1301(1)(f), 11 C.R.S. (1997), provides in pertinent part:

"Driving under the influence" means driving a vehicle when a person has consumed alcohol or one or more drugs ... which ... affects the person to a degree that the person is substantially incapable ... to exercise clear judgment, sufficient physical control or due care in the safe operation of a vehicle.

The DWAI statute, section 42–4–1301(1)(g), 11 C.R.S. (1997), provides in pertinent part:

"Driving while ability impaired" means driving a vehicle when a person has consumed alcohol or one or more drugs ... which ... affects the person to the slightest degree so that the person is less able than the person ordinarily would have been ... to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

not ambiguous, I believe that it is unnecessary to engage in further statutory interpretation and analysis. Since the majority concludes that the word "driving" is susceptible to another interpretation, one that would require only the "actual physical control" of the vehicle, I proceed under the assumption that such an ambiguity exists for purposes of addressing the majority's analysis.

Although Title 42 does not define "driving," Article 1, Part 1, which contains general definitions for Title 42, defines the word "driver" as follows:

" Driver" means every person ... who drives *or* is in actual physical control of a vehicle.

§ 42–1–102(27), 11 C.R.S. (1997) (emphasis added). The majority interprets the word "drives" in this statute as a synonym of "actual physical control," and concludes that these concepts are the same. The problem with the majority's interpretation is that it renders the word "drives" superfluous. It is well-settled that courts must presume that the legislature inserted every part of a statute for a purpose and intended every part to be given effect. *See Colorado Dep't of Revenue v. Borquez,* 751 P.2d 639, 643 (Colo. 1988); *Dawson,* 872 P.2d at 221; *Adams County Sch. Dist.,* 791 P.2d at 691. As the South Carolina Supreme Court stated in interpreting a similar provision:

"[D]riving" and "being in actual physical control" can describe the same activity only if we treat the phrase "or is in actual physical control" as useless baggage. Such a construction would run counter to the principle that "a statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage or superfluous."

*State v. Graves,* 269 S.C. 356, 237 S.E.2d 584, 588 (1977). Giving proper effect to all of the provisions in section 42–4–1301(1), it appears that the act of "driving" a vehicle is not the same as being in "actual physical control" of a vehicle.

There is an additional reason why the definition of "driver" supports my position that "driving" requires movement. The General Assembly's inclusion of the two concepts— "driving" and "actual physical control" of a

vehicle—in the definition of "driver" suggests that the legislature's omission of the language, "actual physical control" of a vehicle from the elements of DUI and DWAI was intentional. If the legislature intended these statutes to be so broad as to include acts other than movement of a vehicle, it would have included the language, "actual physical control" in the elements of these crimes. It is not the province of this court to define criminal conduct. *See Rodriguez,* 914 P.2d at 287. In my view, the authority to determine this policy issue rests with the General Assembly.

The majority also relies on this court's holding in *Brewer v. Colorado Department of Revenue,* 720 P.2d 564, 567 (Colo.1986), in which we held that proof of actual physical control of a vehicle was sufficient to establish that the defendant "drove" a vehicle within the meaning of Colorado's express consent statute. Reliance on *Brewer,* however, is misplaced because *Brewer* involved a civil driver's license revocation proceeding. By contrast, Swain was convicted of a criminal offense. Because this case involves a criminal statute, the rule of lenity requires this court to strictly construe any ambiguity in favor of the defendant. *See People v. Hale,* 654 P.2d 849, 850 (Colo.1982).

The majority notes that after this court's decision in *Brewer,* the legislature declined to amend the DUI and DWAI statutes despite opportunities to do so. I agree with the majority that the legislature's silence gives rise to a presumption that the legislature ratified *Brewer*'s interpretation of "driving." However, the legislature's approval of this definition only extends to civil administrative proceedings like the one involved in *Brewer.* The legislature has never approved of the use of *Brewer*'s definition of "driving" in the context of a criminal proceeding.

Criminalizing activities that involve the use of a vehicle but do not involve moving the vehicle does nothing to further the goal of discouraging *driving* under the influence. Under the majority's rationale, a citizen might be guilty of driving under the influence without ever having driven. Suppose, for example, Swain had never driven the car but

merely used the car as a place to lie down and sleep. As Justice Erickson stated in his special concurrence in *Brewer:*

> [O]ne can easily imagine other factual scenarios in which a person might reasonably be considered to be a "driver" when, under the circumstances, he could not be said to have driven the motor vehicle. Had Brewer been parked on the side of the street with the engine off, he would have been in actual physical control of the car. But I would be reluctant to conclude that he "drove a vehicle" under such circumstances.

*Brewer,* 720 P.2d at 571 (Erickson, J., concurring). Broadening the definition of "driving" to encompass "actual physical control" may discourage motorists who believe their driving may be impaired from making the responsible decision to pull off the road until they feel that they can safely proceed:

> When the facts would just as easily permit the inference that defendant stopped his car to avoid a DWI violation that could result had he continued to drive, it is inconsistent, as well as bad law, to signal intoxicated persons that they might just as well continue driving because they will be arrested for DWI whether they stop or not.

*Boone v. State,* 105 N.M. 223, 731 P.2d 366, 371 (1986) (Walters, J., dissenting). This court must be mindful of the effects of a particular construction of a statute. *See Schuett,* 833 P.2d at 48. The expansive interpretation of "driving" adopted by the majority provides individuals in Swain's position no incentive to leave the road so as not to endanger others. In my view, expanding the definition of driving to mean something other than its plain meaning is an issue of public policy that should be left to the General Assembly.

### III.

I disagree with the majority's determination that the word "driving" is interchangeable with "actual physical control" of a vehicle. In my view, neither the plain language of the statute, the definition of "driver" in Title 42, nor our decision in *Brewer* support the majority's broad interpretation of the DUI and DWAI provisions contained in section 42–4–1301(1). I believe that the majority expands the definition of "driving" beyond that intended by the General Assembly as evidenced by the plain language of the statute. Hence, I respectfully dissent.

I am authorized to state that Justice SCOTT joins in this dissent.

