**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TC X INCORPORATED; TC 126,
INCORPORATED,
<u>Plaintiffs-Appellants,</u>

v.                                                          No. 95-1399

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Joseph F. Anderson, Jr., District Judge.
(CA-93-640-0-17)

Argued: March 4, 1996

Decided: May 22, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and YOUNG,
Senior United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** H. Lane Kneedler, HAZEL & THOMAS, P.C., Rich-
mond, Virginia, for Appellants. Michael Wallace Tighe, CALLISON,
TIGHE, ROBINSON & HAWKINS, L.L.P., Columbia, South Caro-
lina, for Appellee. **ON BRIEF:** S. Miles Dumville, Brian R. Marron,

HAZEL & THOMAS, P.C., Richmond, Virginia, for Appellants. Susanne A. Hawkins, James W. Bradford, Jr., Louis H. Lang, CALLI-SON, TIGHE, ROBINSON & HAWKINS, L.L.P., Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

TC X and TC 126, plaintiffs-appellants, are two corporations which were formed to develop land in Tega Cay, South Carolina.[1] Commonwealth Land Title Company ("Commonwealth") issued an owner's title insurance policy with a face value of $8,400,000 covering the land being developed by TC X. At the time the policy was issued, the land was subject to an ongoing lawsuit over ownership by the Catawba Indian Tribe. Due to the litigation, the parties negotiated a provision directed at insuring against the Catawba Indian Tribe's claims. The agreed upon provision did not insure marketability as defined by the common law, but rather defined marketability as insurability.[2] The policy thus provided a limited form of title insurance covering the Catawba Indian Tribe's claims. Commonwealth also agreed to provide the "same affirmative coverage" set forth in the policy with respect to the Catawba Indian Tribe's claims to any mortgagee or purchaser of the land.[3]

_____

[1] TC is an abbreviation for Tega Cay; the "X" in TC X is the Roman numeral for "10," not the letter "x."

[2] If any title insurance company licensed to transact business in South Carolina would insure title to the property, then title to the property would be considered marketable under the terms of the policy.

[3] Paragraph nine of schedule B to the title policy provides:

> This policy insures against loss or damage which the Insured may sustain by reason of any right or claim of title which has

2

A joint venture formed to develop a conference center on the insured land. TC X planned to transfer the land to TC 126, who was a party to the joint venture. TC 126 would then transfer the land to the joint venture. The joint venture requested from Commonwealth a policy identical to the one it had issued to TC X, but in the amount of $50,000,000. Commonwealth agreed to issue affirmative coverage, but only at the limited face value of the original policy--$8,400,000. Commonwealth took the logical position that $50,000,000 was not the same as $8,400,000.

The joint venture could not obtain financing for its project without title insurance and, therefore, dissolved. TC X and TC 126 filed a complaint in state court alleging that Commonwealth had breached the title insurance contract, breached its duty of good faith and fair dealing, and violated South Carolina law on unfair trade practices. Commonwealth removed the lawsuit to federal court based on federal diversity jurisdiction. 28 U.S.C. § 1332 (1988). The district judge, convinced that there was no breach of contract in Commonwealth's refusal to treat $8,400,000 as equal to $50,000,000, granted summary judgment in favor of Commonwealth on all of the appellants' claims.

_____

been or may be asserted, of record or not, by or on behalf of any Indian or Indian tribe arising out of any treaty or any other transfer of land based on the Indian Non-Intercourse Act of 1790 or any similar state or federal law including any matter raised by the pending lawsuit filed in the United States District Court for the District of South Carolina bearing Civil No. 80-2050-6, entitled Catawba Indian Tribe of South Carolina, also known as the Catawba Nation of South Carolina v. State of South Carolina, et al. This policy includes insurance against loss[or] damage by reason of unmarketability of title (as hereinafter defined) on account of said defect. With respect to said defect the offer of any title insurance company licensed to transact business in the State of South Carolina, including this company, to insure at its regular rates the title to the land herein described in the manner herein set forth above shall be conclusive evidence of the marketability of the title hereby insured. The company agrees that upon request of any mortgagee or vendee of the insured, or the mortgagee of such vendee, to issue its policy containing the same affirmative coverage set forth above, but subject to the same condition.

3

Under South Carolina law, which applies in this diversity lawsuit, the court first examines the plain language of the contract as to the parties' intent. Martin v. Carolina Water Serv. Inc., 312 S.E.2d 556, 558 (S.C. Ct.App. 1984). "If the [policy's] language is clear and capable of legal construction, the language alone determines the force and effect of the" policy. Id. Additionally,"where the agreement . . . is a written contract, the intention of the parties must be inferred from the contents of the whole agreement and not from any one of its several parts." Id. Here, the plain language of the policy provides that Commonwealth is obligated to issue "the same affirmative coverage" to future purchasers and mortgagees of the property. The affirmative coverage provided in the contract clearly is, however, only for $8.4 million. Thus, Commonwealth was not obligated to issue a policy for $50 million. Where a contract is not ambiguous and the intent is clear, a court cannot interpolate into the agreement conditions that are not there. Dean v. American Fire & Casualty Co., 152 S.E.2d 247, 248 (S.C. 1967).[4] Here, the contract is not ambiguous--Commonwealth is obligated only to issue subsequent policies with the same affirmative coverage, which includes a limit on the face value of $8.4 million.

Accordingly, the judgment is

AFFIRMED.

_____

[4] TC X and TC 126 argue that to interpret the policy in the above manner is nonsensical because Commonwealth would be obligated to issue six separate policies--each for $8.4 million, totalling approximately $50 million. That argument fails because neither TC 126 nor the joint venture requested six separate policies for $8.4 million. Furthermore, the policy requires the issuance of subsequent policies for $8.4 million only.

4