0056

Jimmy L. MARTIN, Appellant, v. CAROLINA WATER SERVICE, INC.,
an Affiliate of Utilities, Inc., Respondent.

(312 S. E. (2d) 556)

Court of Appeals

*Jean L. Perrin*, of *Rogers, Duncan, Fullwood & Perrin*, and *Jonathan R. Hendrix*, of *Walker & Hendrix*, Lexington, *for appellant*.

*George S. King, Jr.*, of *Boyd, Knowlton, Tate & Finlay*, Columbia, *for respondent.*

Jan. 30, 1984.

GOOLSBY, Judge:

The principal issue in this breach of contract action is whether an "expansion and modification fee" constitutes a "connection or tap-on fee" within the meaning of a contract between the appellant Jimmy L. Martin and the respondent Carolina Water Service, Inc. Judgment below was entered for Carolina Water Service and Martin appeals. We affirm.

Martin is a developer engaged in the construction and sale of residential housing. Prior to February, 1974, he was the sole owner of all the stock of Rainbow Sewer Corporation. Rainbow owned and operated the water and sewer systems in Glenn Village, a subdivision developed by Martin. In February, 1974, Martin contracted to sell his Rainbow stock to Utilities, Inc., the parent corporation of Carolina Water Service. After Martin transferred his stock to Utilities, Rainbow was merged into Carolina Water Service, a water and sewer utility serving a number of subdivisions throughout this state.

The contract between Martin and Utilities contains the following provision:

> [Utilities] hereby agrees that [Carolina Water Service] will not charge or collect any water or sewer connection or tap-on fees from [Martin], developers or utility customers within [Glenn Village].

When the contract was made, the only fee the Public Service Commission (Commission) authorized Carolina Water Service to charge was a tap-on fee at the rate of approximately Five Hundred Dollars ($500) for each house connected to the water and sewer system.

Four years after Martin sold his stock to Utilities, the Commission authorized Carolina Water Service to charge a new fee called a "modification and expansion fee." This fee is

Five Hundred Dollars ($500) for each house which attaches to the system, Three Hundred Dollars ($300) for water and Two Hundred Dollars ($200) for sewer service. This action resulted after Carolina Water Service began charging the new fee and sought to collect it from Martin.[1]

The lower court, by consent of the parties, referred the case to a special referee, E. B. ("Buzz") Purcell, Jr. The referee concluded that the new fee was not a "connection fee" and that no breach of contract occurred because of its levy. He found that the purpose of the "expansion and modification fee" was to enable the utility to acquire capital funds with which to construct facilities needed to bring it into compliance with various regulatory standards relating to safe drinking water and water treatment. The trial judge mirrored the conclusion of the referee.

Even though there are concurrent findings by the referee and circuit judge in favor of Carolina Water Service, the conclusion of the lower court was based entirely upon the terms of the contract. *Cf., Hamrick v. Cooper River Lumber Co.*, 223 S. C. 119, 126, 74 S. E. (2d) 575 (1953). Where a contract, as here, has been reduced to writing and a question arises as to the intention of the parties, resort is first to be had to its language. *Blakeley v. Rabon*, 266 S. C. 68, 72, 221 S. E. (2d) 767 (1976). If the contract's language is clear and capable of legal construction, the language alone determines the force and effect of the instrument. *Superior Auto Ins. Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973); *McPherson v. J. E. Sirrine & Co.*, 206 S. C. 183, 33 S. E. (2d) 501 (1945). Words employed by the contract are to be given their usual and ordinary meaning, except where it appears they were used in a different sense or have a technical meaning. *Blakeley v. Rabon, supra;* 17 Am. Jur. (2d) *Contracts* § 247 at 637-38 (1964). Also, where the agreement in question is a written contract, the intention of the parties must be inferred from the contents of the whole agreement and not from any one of its several parts. *Thomas-McCain v. Siter*, 268 S. C. 193, 232 S. E. (2d) 728 (1977).

---

[1] The South Carolina Supreme Court affirmed the overruling of Carolina's demurrer to the complaint almost four years ago. *See Martin v. Carolina Water Services, Inc.*, 273 S. C. 43, 254 S. E. (2d) 52 (1979).

Neither the referee nor the trial judge expressly found that the disputed provision of the contract at issue contained an ambiguity. In fact, the trial judge expressly resorted to the contract in reaching his conclusion that a "modification and expansion fee" is not a "connection or tap-on fee." We likewise find no ambiguity. We must determine, then, whether an "expansion and modification fee" is a "connection or tap-on fee" by giving effect to the contract's language and by examining the entire agreement.

As to the language of the provision quoted above, we note that neither the term "connection fee" nor the term "tap-on fee" is defined by the contract itself. We note too that the word "or" appears between the words "connection" and "tap-on." As used in its ordinary sense, the word "or" is a disjunctive particle that denotes an alternative [*State v. Pilot Life Ins. Co.*, 257 S. C. 383, 186 S. E. (2d) 262 (1972) ]; however, the word "or" may also be employed as a coordinate conjunction introducing a synonymous word or phrase or it may join different terms expressing the same idea or thing and it may be used as a particle to connect two words meaning the same thing. *State v. Spindel*, 24 N. J. 395, 132 A. (2d) 291 (1957).

The word "tap," as a verb, means, among other things, "to make a connection with (a … main …)." *Webster's New World Dictionary* at 1454 (2d ed. 1976). The noun "connection" means "an act of connecting." *Webster's Third New International Dictionary* at 481 (1976); cf. *State v. Patterson*, 95 S. C. 463, 79 S. E. 309 (1913).

The contract between the parties in Article II, Paragraph 16, makes reference to "connection fees" listed in an attached exhibit. The exhibit, which is an order from the Commission approving designated charges, refers to a "tap fee," a "tapping fee," and a "reconnect fee." According to the exhibit, the charge "[f]or larger water taps" is the "[c]ost of [t]ap plus 20%."

The ordinary meanings of the words "tap" and "connection" and the contract's use of the term "connection fees" to embrace both a "tap fee" and a "tapping fee" indicate to us that the parties intended that the particle "or" join two different terms which mean the same thing. We therefore hold that the terms "connection fee" and "tap-on fee," as used in the contract, are synonymous.

One, of course, is not obligated to pay any "tap" or "tap-on" fee until a tap into a system occurs; and as we infer from the exhibit mentioned above, each tap fee represents the cost associated with an initial water or sewer connection and not with the cost related to any subsequent reconnection. Indeed, nothing in the contract suggests that the term "connection or tap-on fee" refers to anything but the cost of attaching a property owner or other user to a water or sewer line. We conclude, then, that a "connection or tap-on fee" is a charge related to the cost of installation made by a utility for an original entry into a main service line. *Cf. O'Brien v. Missouri Cities Water Co.*, 574 S. W. (2d) 13 (Mo. App. 1978); *cf. also* S. C. Code of Laws, *Regulations*, 103-702, 14 (1976) ("A ... charge related to the cost of installing the utility's service line from the main to the customer's premises.").

As to the principal issue of whether an "expansion and modification fee" constitutes a "connection or tap-on fee," we note that nowhere does the contract either authorize or prohibit an "expansion and modification fee." Clearly, an "expansion and modification" fee was not within the contemplation of either party at the time of the contract. It was completely unforeseen and therefore could not have been addressed by the contract.

In any event, an "expansion and modification fee" by its very terms is not a "connection or tap-on fee." The word "expansion" means "the act or process of increasing in extent, size, number, volume or scope" [ *Webster's Third New International Dictionary* at 798 (1976) ] while the word "modification" is defined as "the act or action of changing something without fundamentally altering it." *Id.* at 1452. When imposed by a water or sewerage utility, an "expansion and modification fee" denotes, we hold, a charge related to the costs of increasing the size and volume of a water or sewer system and of making changes in either such system. A "connection or tap-on fee" bears no relation to either expanding or modifying a utility system.

Our conclusion that an "expansion and modification fee" and a "connection and tap-on fee" are two separate and distinct charges enjoys Commission support. In its order authorizing Carolina Water Service to levy an "expansion and modification fee," the Commission determined the fee to be

distinct and separate from a "connection or tap-on fee." Orders of the Commission, our Supreme Court has said, "are presumptively correct." *Greyhound Lines, Inc. v. S. C. Public Service Commission*, 274 S. C. 161, 164, 262 S. E. (2d) 18 (1980).

Martin complains, however, that the clear preponderance of the evidence is contrary to the lower court's finding that an "expansion and modification fee" is not, in fact, a "connection or tap-on fee." We do not agree. The evidence clearly supports the lower court's conclusion that the two fees are entirely different and that the fee charged Martin and others within Glenn Village is an "expansion and modification fee" and not a "connection or tap-on fee."

The record shows that the "expansion and modification fee" was first authorized by the Commission in 1978; and it was made applicable to all utility systems owned by Carolina Water Service and not simply the system in Glenn Village. Moreover, Glenn Village developers and customers retain their exemption from paying the tap-on fee of five hundred dollars paid by Carolina Water Service customers elsewhere. The "expansion and modification fee" was authorized by the Commission because the utility needed capital to expand and modify its water and sewerage plants in order to comply with the State Safe Drinking Water Act [*see* S. C. Code of Laws §§ 44-55-10 *et seq.* (1976) ] and the National Pollutant Discharge Elimination System program requirements prescribed by the Federal Water Pollution Control Act. *See* 33 U. S. C. § 1342. The fee was not intended to defray the cost of linking houses to water and sewer lines, and there is no evidence that it was so intended. The lower court correctly held that the contract between Martin and Utilities was not broken by Carolina Water Service's imposition of an expansion and modification fee.

Finally, we see no merit at all to Martin's contention that he is entitled to a rescission of his contract with Utilities because of breach of contract. Carolina Water Services continues to provide Martin "cost free *tap-on* connections." *See Martin v. Carolina Water Services, supra*, 273 S. C. at 46, 254 S. E. (2d) 52. (emphasis ours). No breach of a contract has occurred; and without a substantial and fundamental breach, there can be no rescission. *Smith v. First*

*Provident Corp.,* 245 S. C. 509, 141 S. E. (2d) 646 (1965); *Davis v. Cordell,* 237 S. C. 88, 115 S. E. (2d) 649 (1960).

We need not address Carolina Water Service's additional sustaining grounds because the judgment below is

Affirmed.

SHAW and CURETON, JJ., concur.