PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CATAWBA INDIAN TRIBE OF SOUTH
CAROLINA,
　　　　　　*Plaintiff-Appellant,*

v.

CITY OF ROCK HILL, South Carolina,
　　　　　　*Defendant-Appellee.*

No. 05-2050

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Cameron McGowan Currie, District Judge.
(CA-04-22374-CMC)

Argued: October 25, 2006

Decided: September 20, 2007

Before WILLIAMS, Chief Judge, TRAXLER, Circuit Judge, and
WIDENER, Senior Circuit Judge.[1]

Affirmed by published per curiam opinion.

## COUNSEL

**ARGUED:** Jerry Jay Bender, BAKER, RAVENEL & BENDER,
L.L.P., Columbia, South Carolina, for Appellant. W. Mark White,

---

[1]Judge Widener heard oral argument in this case but did not participate
in the decision. The opinion is filed by a quorum of the panel pursuant
to 28 U.S.C. § 46(d).

SPENCER & SPENCER, P.A., Rock Hill, South Carolina, for Appellee. **ON BRIEF:** W. Chaplin Spencer, Jr., SPENCER & SPENCER, P.A., Rock Hill, South Carolina, for Appellee.

---

**OPINION**

PER CURIAM:

Appellant Catawba Indian Tribe (the Tribe) filed suit against the City of Rock Hill (the City), alleging that a recently enacted City Ordinance impaired contracts previously entered into by the parties for the construction of water infrastructure to serve the Tribe's reservation. Because the Ordinance did not impair the contracts entered into between the Tribe and the City, we conclude that the Contracts Clause of the United States Constitution was not violated.

I.

In 1999, the parties entered into a "WATER AND/OR SEWER SERVICE AGREEMENT AND RESTRICTIVE COVENANT." (J.A. at 114.)[2] The agreement was essentially a promise from the City to provide water services in the future so long as the Tribe entered into a restrictive covenant for future annexation of the Reservation. (J.A. at 115 ("Owner acknowledges that a purpose of this Agreement is to ensure . . . Owner's full and complete cooperation with any effort to annex the subject property.").)

Approximately three years later, during the summer and fall of 2002, the Tribe entered into four separate Extension Agreements with the City for the construction of water mains and sewer facilities to serve the Tribe's reservation, which is located outside the City's municipal limits. Under the contracts, the Tribe agreed to pay a total of $260,464.00 for the construction of sewer mains and accessories, $125,934.00 for the construction of water mains and accessories, and $3,630.00 for the installation of sixty-six water meters. Clause 4 of

---

[2]Citations to the J.A. refer to the Joint Appendix filed by the parties to this appeal.

the contracts concerned the amount to be paid for water meter instal-
lations, with each water meter costing $55.00. Clause 4 also stated
that "[t]he water meters will be installed by the City, on request by
the Developer, when water service is needed." (J.A. at 26.) The Tribe
quickly made all payments and fully performed under the contracts,
although it did not immediately request service.

On March 17, 2003, the City adopted an Ordinance imposing water
and wastewater impact fees "for all water and/or wastewater service
requests," including requests for "new service, water and/or waste-
water extension requests and agreements, additional meters, or
upgrades of existing services that will create any new or additional
demand on the City's water and/or wastewater systems." (J.A. at 35.)
Although it adopted the Ordinance on March 17, the City gave all
interested parties until June 30, 2003 to request service without impo-
sition of impact fees.

The Tribe did not request service and installation of the meters
until August 2003. At that time, the City imposed an impact fee of
$100,478.00 in connection with the water meter and service installa-
tion. The Tribe paid the sum under protest and initiated this action,
complaining that the City's imposition of additional fees violated the
Contracts Clause of the United States Constitution.

Both the Tribe and the City agreed that the case was ripe for sum-
mary judgment in the district court and filed cross motions for sum-
mary judgment. On August 22, 2005, the district court granted the
City's motion and denied the Tribe's motion. Although the district
court assumed, arguendo, that the contracts were impaired, it found
that there was no "substantial" impairment. Alternatively, even if
there was substantial impairment, the district court found that any
such impairment was reasonable and necessary to serve an important
public purpose.

The Tribe timely appealed. We have jurisdiction pursuant to 28
U.S.C.A. § 1291 (West 2006).

II.

A.

We review de novo the district court's grant of summary judgment in favor of the City, applying the same standard as did the district court. *See Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006) (en banc). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). We must construe the facts in the light most favorable to the Tribe, and we may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435 (4th Cir. 2001).

B.

The Contract Clause states that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Although the Clause is phrased in absolute terms, it is not interpreted "absolutely to prohibit the impairment of either government or private contracts." *Balt. Teachers Union v. Mayor and City Council of Balt.*, 6 F.3d 1012, 1014 (4th Cir. 1993); *see Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934) (holding that "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.").

The Supreme Court has formulated a three-part analysis to determine if the Contract Clause has been violated. First, a court must ask whether there has been an impairment of a contract. *See U. S. Trust Co. v. New Jersey*, 431 U.S. 1, 17 (1977) (holding that "as a preliminary matter, [a] claim requires a determination that the [state action] has the effect of impairing a contractual obligation"). Second, a court must ask "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). Third, if the court finds a substantial impairment, it must ask "whether that impairment is nonethe-

less permissible as a legitimate exercise of the state's sovereign powers." *Balt. Teachers*, 6 F.3d at 1015. In short, then, a claimant must show (1) contractual impairment, (2) that is substantial, and (3) not a legitimate exercise of state power. *See City of Charleston v. Pub. Serv. Comm's of W. Va.*, 57 F.3d 385, 391 (4th Cir. 1995) ("Only if there is a contract, which has been substantially impaired, and there is no legitimate public purpose justifying the impairment, is there a violation of the Contract Clause.").

The Tribe contends that the imposition of an impact fee by the City constituted an unconstitutional impairment of the obligation of the contract that was substantial and not a legitimate exercise of the City's power.[3] The City counters that the imposition of impact fees did not impair the contracts, and even if it did, the imposition of water service fees and rates is a legitimate exercise of the City's police power. The City's argument is persuasive.

There is no question that there existed contracts between the City and the Tribe, and that the Tribe fully performed its obligations under the contracts. The central issue in this case, however, is whether the contracts provided merely for the installation of water meters or for the installation of meters *and* the turning on of water services. Accordingly, the City argues that the impact fees imposed by the Ordinance did "not relate to any term or condition of the [contracts]." (Appellee's Br. at 12.) Under the City's reasoning, it fully performed the terms of the contracts and did nothing to impair that performance.[4]

---

[3]"It is no longer open to question that municipal legislation passed under supposed legislative authority from the State is within the prohibition of the Federal Constitution and void if it impairs [the Contract Clause]." *N. Pac. Ry. Co. v. Minnesota*, 208 U.S. 583, 590 (1908).

[4]Although the district court assumed — without finding — that the contract was impaired, we review judgments, not opinions. *E.g.*, *California v. Rooney*, 483 U.S. 307, 311 (1987). We are accordingly entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below. *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) ("It is well accepted . . . that without filing a cross-appeal . . ., an appellee may rely upon any matter appearing in the record in support of the judgment below.").

To answer whether the contracts were impaired, we must interpret the meaning of the contracts and the subsequent Ordinance, applying South Carolina law. South Carolina follows an objective contract interpretation rule, meaning that if the language of a contract "is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument." *Blakeley v. Rabon*, 221 S.E.2d 767, 769 (S.C. 1976). "Words cannot be read into a contract which impart intent wholly unexpressed when the contract was executed." *Id.*

The contracts' language leads to the conclusion that their purpose was to establish (1) the necessary infrastructure to be constructed to make the connection; (2) the sum to be paid for the construction; (3) the dedication of the infrastructure by the Tribe to the City; (4) the sum to be paid for the installation of the meters; and (5) the allocation of risk and warranty for the work. Thus, while the contracts specified the sum to be paid for installation of the meters, they further stated that "[t]he water meters will be installed by the City, on request by the Developer, when water service is needed." (J.A. at 26.) For the Tribe to prove an impairment, then, it must show that this language also bound the City with respect to impact fees for initiating water service, as opposed to solely infrastructure, or capacity. The Tribe fails to make this showing.

In *Martin v. Carolina Water Service, Inc.*, 312 S.E.2d 556 (S.C. Ct. App. 1984), the state court addressed the question of whether a water contract, which prohibited the imposition of any "connection" or "tap" fees, was violated upon the imposition of an "expansion and modification fee," which consisted of "a charge related to the costs of increasing the size and volume of a water or sewer system and of making changes in either such system." *Id.* at 559. The court concluded that "nothing in the contract suggests that the term 'connection or tap-on fee' refers to anything but the cost of attaching a property owner . . . to a water or sewer line," *id.*, and, therefore, such a provision "bears no relation to either expanding or modifying a utility system," *id.* Accordingly, the court held that the contract was not violated because the expansion fees were "separate and distinct" from the connection fees. *Id.*

*Martin* is analogous to the case here, where there existed contracts for the water infrastructure and attachment of the Tribe to the City's

system, combined with the Ordinance imposing impact fees for new service where such service would "create any new or additional demand on the City's water and/or wastewater systems." (J.A. at 35.) Also, the contracts at issue here do not expressly prohibit impact fees — just as those in *Martin* did not expressly prohibit modification fees — leading to the inference that such fees were "not within the contemplation of either party at the time of the contract." *Martin*, 312 S.E.2d at 559 (noting that the contract is silent on the question of expansion or modification fees).

The Tribe, in fact, "does not dispute that it was required to have a separate water and sewer service agreement," but argues instead that it had such an agreement, relying on the September 17, 1999 contract. (Appellant's Br. at 11.) The record, however, proves the insignificance of that agreement.[5] That agreement was essentially a promise from the City to provide water services in the future so long as the Tribe entered into a restrictive covenant for future annexation of the Reservation. (J.A. at 115 ("Owner acknowledges that a purpose of this Agreement is to ensure . . . Owner's full and complete cooperation with any effort to annex the subject property.").) The agreement did not speak of specific services, infrastructure, or prices. Instead, the plain object was to impose a restrictive covenant for as long as water service was provided. (J.A. at 116 (providing that the covenant shall be in effect until either the property is annexed in its entirety or the property is no longer being served by the city).) In fact, the Tribe concedes that it expected to pay the regular fee that the City charges for such services. But the natural extension of this argument is that nothing restricts a public utility from raising or otherwise varying its fees. That is what happened in this case. The City simply raised the fee for turning on the water service.

---

[5]The Tribe also argues that the contract can be interpreted to suggest that "the Ordinance has no application to the water meters to be installed pursuant to it" because the meters cannot be considered "new" or "additional." (Appellant's Br. at 21.) This argument is irrelevant to (and actually goes against) the Tribe's Contract Clause claim. If the Ordinance cannot be enforced against the Tribe on its own terms, then of course it could not have impaired any existing contract with the Tribe. Moreover, this claim was not raised below by the Tribe. The Tribe — in seeking to raise this claim — should have sought first a declaration that the Ordinance was inapplicable to the Tribe's request for service.

Moreover, the annexation agreement explicitly contemplates future agreements and fees in connection with service:

> Any actions or statements by the City in relation to providing utilities services to the [Tribe], including but not limited to, the issuance of a letter of willingness and capacity to serve, the extension of a water or sewer main, or the commencement of service, is made subject to the terms of this Agreement and if this Agreement is breached by Owner then all such actions or statements shall be null and void and no reliance by any entity may be placed thereon.

> [The Tribe] agrees that any breach of conditions of any and all agreements associated with utility service made in accordance with this Agreement, shall be a breach of this Agreement. Such conditions may include, but are not limited to: *payment of applicable tap-on fees as fixed by the City Ordinance; and payment to the City when due such water and/or sewer charges or user fees as may be imposed from time to time.*

(J.A. at 115 (emphasis added).

In short, the 1999 agreement was not breached by the Ordinance, and the existence of the agreement does nothing to help the Tribe's argument. *See City of Charleston*, 57 F.3d at 394 (holding in the substantial impairment context that the "contracts themselves contain express acknowledgments that the parties' rights were subject to legislative regulation [and] there was a long established precedent of extensive state regulation of public utilities").

We therefore hold that the 2002 contracts were not impaired by the issuance of the Ordinance, which did not directly contravene any clause in the contracts. Accordingly, summary judgment was appropriate on the alternative ground that there was no impairment of the contracts.

### III.

None of the contracts entered into by the parties prevented the City from imposing or changing fees unrelated to the actual installation of

meters or the laying of pipes. Because the fee in question did not affect either of these contractual obligations, the imposition of the fee did not impair the obligation of the contract between the City and the Tribe. We therefore affirm the district court's grant of summary judgment to the City.

*AFFIRMED*