**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1140

MELLON INVESTOR SERVICES, LLC,

Plaintiff - Appellant,

versus

LONGWOOD COUNTRY GARDEN CENTERS, INCORPORATED,

Defendant - Appellee.

-------------------------------

SECURITIES TRANSFER ASSOCIATION, INCORPORATED,

Amicus Supporting Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  James A. Beaty, Jr., Chief District Judge.  (1:06-cv-00440-JAB)

Argued:  December 6, 2007          Decided:  February 6, 2008

Before WILLIAMS, Chief Judge, DUNCAN, Circuit Judge, and John Preston BAILEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Charles Gordon Brown, BROWN & BUNCH, Chapel Hill, North Carolina, for Appellant.  Mark A. Harmon, HODGSON RUSS, L.L.P., New York, New York, for Amicus Supporting Appellant.   Sean Eric

Andrussier, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Scott D. Zimmerman, BROWN & BUNCH, Chapel Hill, North Carolina, for Appellant. Jack M. Strauch, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mellon Investor Services, LLC ("Mellon") filed a complaint against Longwood Country Garden Centers, Inc. ("Longwood"), asserting a warranty claim under Article 8 of the Uniform Commercial Code ("U.C.C.") (Count I), as well as one count of negligent misrepresentation (Count II), one count of equitable subrogation (Count III), and two counts of indemnity (Counts IV and V). The district court granted Longwood's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), concluding that the warranty created by Article 8 of the U.C.C. did not bear on Mellon's relationship with Longwood and that the U.C.C. had displaced Mellon's equitable and common-law tort claims.[1]

We affirm in part and reverse in part. We conclude, as the district court did, that Mellon has failed to state a claim under Article 8 of the U.C.C. On the other hand, we hold that the U.C.C. does not displace Mellon's equitable and common-law tort claims. Turning to the merits of these claims, we conclude that Mellon has stated claims for negligent misrepresentation and indemnity, but not for equitable subrogation. Accordingly, we affirm the district court's dismissal of Counts I and III and reverse the court's dismissal of Counts II, IV, and V.

---

[1]The district court adopted and affirmed the findings of the United States Magistrate Judge. In speaking of the proceedings below, we will only refer to the district court.

I.

Mellon is a New Jersey limited-liability company that specializes in serving as a stock-transfer agent for publicly traded companies. In 2001, Principal Financial Group, Inc. ("PFG") hired Mellon as its stock-transfer agent. In this capacity, Mellon registered 48,961 uncertificated shares of PFG stock in the name of the L.A. Reynolds Company Salaried Employees' Pension Trust ("Trust").

L.A. Reynolds Company created the Trust in 1959, the same year that the company established a defined-benefit plan for its employees. The Trust terminated in the 1970s after it had paid all of its debts and had made all terminating distributions to plan participants. Over the course of many years, and through a series of transactions, the Trust's undistributed assets were converted into the 48,961 uncertificated shares of PFG at issue in this appeal. Eventually, these shares came to reside in the Fisher River Timber Land & Cattle Company ("Fisher River"), a successor corporation to the original L.A. Reynolds Company. As the shares of PFG stock changed hands, however, confusion arose as to their ownership. For instance, the address of the Trust was unknown, as evidenced by the fact that dividend checks were mailed to the Trust and returned in 2002 and 2003 because the mailing address was invalid.

In April 2004, Michael Franklin Smith, a New York attorney, acquired information about the uncertificated PFG stock, including the confidential account key necessary to access the shares.[2] Although Mellon's complaint does not shed light on how Smith acquired the account key, Smith describes how he acquired the key in an affidavit submitted in this case. According to Smith, he was a personal and professional acquaintance of Mike Ryan, the manager of Mellon's unclaimed property department. Ryan gave Smith copies of numerous confidential Mellon documents relating to unclaimed PFG shares held by Mellon in the hopes that Smith would help Mellon locate the owners. Among those confidential documents was a "screen shot" image from Mellon's computer system showing Mellon's internal account information regarding the Trust's PFG stock, including the account key.

Through his efforts to locate L.A. Reynolds Company, Smith came upon Longwood, a North Carolina corporation doing business as L.A. Reynolds Company. Previously, in 1991, Longwood purchased substantially all of the assets of L.A. Reynolds Landscaping, Inc., a company formed in 1977 by Fisher River's sole shareholder Jon Reynolds and two other men, and began to operate under the name "L.A. Reynolds Company." It is at this point that things became messy, for Longwood's "L.A. Reynolds Company" had no relationship

---

[2]In this opinion, "Smith" refers to Michael Franklin Smith as well as his law offices.

to the original L.A. Reynolds Company. Thus, Smith had not actually found the true owner of the uncertificated PFG shares.

Unaware that Fisher River was the successor to the original L.A. Reynolds Company (and hence the true owner of the uncertificated PFG shares), Smith offered to recover the uncertificated PFG shares for Longwood for a fee equal to one-third of the stock value recovered. Longwood accepted the contingency agreement and retained Smith as its lawyer to obtain and liquidate the PFG shares.

In June 2004, Smith contacted Mellon about the uncertificated PFG shares. Instead of communicating with his acquaintance Mike Ryan, however, Smith dealt with David Spritzer, who handled stock transfers for Mellon. After Smith provided the account key for the Trust account, Spritzer confirmed the name of the registered owner of the account as "The L.A. Reynolds Company Salaried Employees Pension Trust" and asked Smith for proof of his authorization to represent the registered owner. Smith provided a copy of the power-of-attorney that Longwood Chairman Gerald Long signed on behalf of "L.A. Reynolds Company" (the name under which Longwood was doing business). This convinced Spritzer that Smith was authorized to represent the rightful owner of the PFG shares.

At this point, Longwood, through Smith, sent an instruction to Mellon to register a transfer of the uncertificated PFG shares to Longwood and to remit the proceeds of the liquidated shares to

6

Longwood as well. Relying on Smith's knowledge of the confidential account key and documents verifying his power-of-attorney, Mellon registered a transfer of the uncertificated PFG shares and issued checks for the proceeds and unredeemed dividends, payable to the Trust in care of Smith. The unredeemed dividends totaled $34,272.70, and the net proceeds from the registration of the transferred shares totaled $1,680,117.33.

Once he received the funds, Smith paid himself the one-third contingency fee out of the funds and wrote a check in the amount of $1,148,641.32 to "L.A. Reynolds Company." He mailed the check to Longwood, accompanied by a document describing the source of the funds. Upon receiving this check and accompanying document, Longwood became concerned that the funds did not belong to it. Longwood thus deposited the funds from the check into an escrow account and contacted Jon Reynolds, owner of Fisher River, the successor to the original L.A. Reynolds Company, about the liquidation of the assets.

Thereafter, Fisher River filed suit against Longwood, Gerald Long, Smith, and Mellon for common-law negligence and conversion in North Carolina state court.[3] Fisher River dismissed Longwood and

---

[3]When served with Fisher River's complaint, Mellon contacted PFG to determine if PFG would indemnify Mellon under their indemnity agreement, which excluded indemnity for losses resulting from Mellon's own negligence. PFG declined to provide a defense or to indemnify Mellon. To preserve its business relationship with PFG, Mellon did not pursue any indemnity claims against PFG.

Gerald Long from the suit after they transferred the escrow account to Fisher River in exchange for Fisher River's promise not to sue them in the future, but Fisher River maintained its claims against Mellon and Smith.[4] Mellon cross-claimed against Smith and impleaded Longwood into the suit as a third-party defendant. Fisher River later amended its complaint to add a claim against Mellon under U.C.C. § 8-404 (2005) for wrongful registration of transfer,[5] and the state court entered summary judgment in favor of Fisher River on that claim. Mellon paid the judgment in full.[6]

After paying the state court judgment in full, Mellon brought the present suit against Longwood in the Middle District of North Carolina, alleging claims for breach of the originator's warranty under U.C.C. § 8-108(e) (2005), negligent misrepresentation, equitable subrogation, and indemnity.[7] Longwood moved to dismiss

---

[4]Despite Jon Reynolds's personal plea to Smith asking him to return his contingency fee, Smith refused, taking the position that he had earned his fee.

[5]Section 8-404(a)(1) of the U.C.C. provides that "an issuer is liable for wrongful registration of transfer if the issuer has registered a transfer of a security to a person not entitled to it, and the transfer was registered . . . pursuant to an ineffective endorsement or instruction." U.C.C. § 8-404(a)(1) (2005).

[6]The state court judgment required Mellon to pay Fisher River $31,008 for proportional dividends due Fisher River and $1,685.94 in court costs. The judgment also required Mellon to acquire 16,320 shares of common PFG stock (at a total cost of $806,014) and transfer this replacement stock to Fisher River.

[7]Section 8-108(e) of the U.C.C. provides that "[a] person who originates an instruction for registration of transfer of an uncertificated security warrants to the issuer that: (1) the

the complaint, and Mellon responded by obtaining an assignment of all of PFG's rights of recovery against Longwood for breach of its originator's warranty; thereafter Mellon moved for summary judgment.

The district court granted Longwood's motion to dismiss, concluding that the originator's warranty under U.C.C. § 8-108(e) did not run to a transfer agent and that the U.C.C. displaced Mellon's equitable and common-law claims. Mellon noted a timely appeal, and we have jurisdiction under 28 U.S.C.A. § 1291 (2006).

II.

On appeal, Mellon argues that the district court erred in dismissing its U.C.C. claim and in ruling that the U.C.C. displaced its equitable and common-law tort claims. We review de novo a decision dismissing a complaint under Rule 12(b)(6) for failure to state a claim. Glaser v. Enzo Biochem, Inc., 464 F.3d 474, 476 (4th Cir. 2006). We must dismiss a complaint if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In reviewing the district court's dismissal under Rule 12(b)(6), we must view as true all of Mellon's well-pleaded allegations, and we

---

instruction is effective; and (2) at the time the instruction is presented to the issuer the purchaser will be entitled to the registration of transfer." U.C.C. § 8-108(e).

must draw all reasonable inferences in Mellon's favor.  <u>Glaser</u>, 464
F.3d at 476.

A.

This case requires us to consider the law as it relates to
the transfer of securities.  Under Delaware law,[8] the rights and
relations of parties to a securities transfer are governed by
Delaware's version of Article 8 of the Uniform Commercial Code,
Del. Code Ann. tit. 6, § 8-101 <u>et seq.</u> (2005) [hereinafter Article
8].  In a direct holding system such as Delaware's,[9] the
registration of a transfer is the point at which ownership rights
of the prior registered owner end and the ownership rights of the
new registered owner begin.  Registering a transfer of an
uncertificated security initially requires that the issuer of the
security receive an instruction to register the transfer of the
security.  Del. Code Ann. tit. 6, § 8-102(a)(12) (defining

---

[8]In this diversity action, we apply North Carolina's
substantive law, including its choice-of-law rules.  <u>See</u> <u>Private
Mortgage Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.</u>, 296 F.3d
308, 312 (4th Cir. 2002).  The district court concluded that under
North Carolina choice-of-law provisions, Delaware law controls the
U.C.C. claim and New Jersey law controls the common-law tort
claims.  Because neither party contests this determination, we need
not review it.  <u>Casio, Inc. v. S.M. & R. Co.</u>, 755 F.2d 528, 530-31
(7th Cir. 1985)("Parties can within broad limits stipulate the
substantive law to be applied to their dispute, and that is what we
deem them to have done here by not objecting to the district
judge's application of the substantive law of Illinois to their
dispute.").

[9]Because the PFG shares were registered directly with PFG
rather than a securities intermediary like a brokerage firm, the
direct holding system rules apply.

10

"[i]nstruction" as "a notification communicated to the issuer of an uncertificated security which directs that the transfer of the security be registered or that the security be redeemed"). For the instruction to be effective under the statute, the registered owner of the uncertificated security (or its agent) must make the instruction. Del. Code Ann. tit. 6, § 8-107(a),(b) (explaining that "[a]n . . . instruction . . . is effective if . . . made by the appropriate person" and defining an "[a]ppropriate person" as "the registered owner of an uncertificated security"). Conversely, an instruction is ineffective if the originator of the instruction is <u>not</u> the security's registered owner.

If, pursuant to an ineffective instruction (i.e., an instruction not from the registered owner), an issuer registers a transfer of a security to a person not entitled to the security, the issuer is liable to the registered owner of the uncertificated security for wrongful registration of transfer. Del. Code Ann. tit. 6, § 8-404(a). Likewise, the transfer agent, the person who helped effectuate the transaction, is also liable to the registered owner. Del. Code Ann. tit. 6, § 8-407 ("A person acting as . . . transfer agent . . . for an issuer in the registration of a transfer of its securities . . . has the same obligation to the holder or owner of a[n] . . . uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions.").

11

To shift any loss arising out of a wrongful registration of transfer to the person who actually caused the loss (i.e., the originator of the ineffective instruction), Article 8 provides that certain warranties are made by the originator of the instruction. Specifically, "[a] person who originates an instruction for registration of transfer of an uncertificated security warrants to the <u>issuer</u> that: (1) the instruction is effective; and (2) at the time the instruction is presented to the issuer the purchaser will be entitled to the registration of transfer."  6 Del. C. § 8-108(e) (emphasis added).

B.

In this case, Mellon seeks to sue Longwood under Article 8 for breach of the originator's warranty.  To start our analysis, we note that the following facts are undisputed:  PFG was the issuer of the shares; Mellon was PFG's transfer agent; the PFG shares were an uncertificated security because they were registered only in book entry form and no physical certificate existed, <u>see</u> Del. Code Ann. tit. 6, § 8-102(a)(18) (defining "[u]ncertificated security" as "a security that is not represented by a certificate"); and the instruction from Longwood to PFG was ineffective because Longwood was not the registered owner of the shares.  The central issue presented here -- one that, to our knowledge, no federal or state appellate court has addressed -- is whether the word "issuer" in U.C.C. § 8-108(e) also includes transfer agents.  The answer is no.

12

Section 8-108 does not define the term "issuer," but the Notes accompanying § 8-108(e) cross-reference the definition of "issuer" in § 8-201. Section 8-201(c) provides that "[w]ith respect to a registration of a transfer, issuer means a person on whose behalf transfer books are maintained." Del. Code Ann. tit. 6, § 8-201(c).

In the registration of transfer at issue, Mellon maintained the transfer books on behalf of PFG. Thus, under the plain language of the Delaware statute, Mellon, as a transfer agent, cannot be an "issuer" for purposes of § 8-108(e). We are unpersuaded by Mellon's arguments to the contrary and therefore conclude that Mellon has failed to state a claim against Longwood for breach of the originator's warranty under § 8-108(e).[10]

### III.

#### A.

In an effort to save the remainder of its complaint, Mellon alternatively contends that the provisions regarding the transfer of securities in Article 8 have not displaced any equitable or common-law tort claims it might assert against Longwood. "Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity . . . supplement its

---

[10]To the extent that Mellon contends that PFG has "assigned" all of its rights to Mellon so that Mellon stands in the place of PFG as an issuer under Article 8, we agree with the district court that PFG has sustained no liability, i.e., no injury, and thus has no claim against Longwood to assign to Mellon.

provisions." Del. Code Ann. tit. 6, § 1-103(b) (2005). Our task, therefore, is "to determine whether [Article 8 of the UCC] is a 'particular provision' that displaces the common law." Equitable Life Assurance Soc'y of the U.S. v. Okey, 812 F.2d 906, 909 (4th Cir. 1987).

In this case, the district court first concluded that "[t]he applicable UCC provisions in Article 8 provide a comprehensive remedial scheme regarding the rights and obligations of those persons and entities involved in the wrongful registration of transfers of securities." (J.A. at 485.) Pursuant to this conclusion, the district court held that "even despite the fact that [Mellon] as a transfer agent has no recourse under the warranty provisions of section 8-108, [Mellon]'s right to common law remedies has been displaced by Article 8's comprehensive remedial scheme." (J.A. at 485); see also Okey, 812 F.2d at 909 (indicating that specific provisions may displace common law when the U.C.C. "comprehensively covers the field of legal theories available"); Yahn & McDonnell, Inc. v. Farmers Bank of Del., 708 F.2d 104, 113 (3d Cir. 1983) ("[W]here the Code provides a comprehensive remedy for parties to a transaction, a common law action is barred. But a remedy in tort will be recognized where the Code's policy is furthered by placing the risk of loss on the party most able to minimize that risk." (internal quotation marks and citation omitted)); N.J. Bank, N.A. v. Bradford Sec.

14

Operations, Inc., 690 F.2d 339, 346 (3d Cir. 1982)(same in Article 8 context).

We disagree with the district court's conclusion on this issue. Insofar as Mellon has brought claims for equitable subrogation and common-law indemnity, there is a presumption that the U.C.C. does not displace claims based in equity.[11] Adkinson v. Int'l Harvester Co., 975 F.2d 208, 213 (5th Cir. 1992) ("[W]ith regard to equitable principles, the presumption appears to be against displacement. . . . Code sections do not occupy the equity field. Rather, general equitable principles remain largely intact, for they are only rarely particularly displaced." (internal quotation marks and citations omitted)). Moreover, aside from this presumption, there is no "particular provision" in Article 8 that displaces Mellon's equitable claims for subrogation and indemnity. Likewise, there is no provision in Article 8 that displaces Mellon's common-law tort claim for negligent misrepresentation. In our view, the remedial scheme in Article 8 cannot be considered "comprehensive" when transfer agents are provided with no remedies at all under the Code. We therefore conclude that Article 8 of the U.C.C. does not displace Mellon's equitable and common-law claims.

---

[11]Common-law indemnity is "an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Harley Davidson Motor Co. v. Advanced Die Casting, Inc., 696 A.2d 666, 670 (N.J. 1997).

B.

Because we may affirm a dismissal for any reason in the record, Catawba Indian Tribe of S.C. v. City of Rock Hill, 501 F.3d 368, 372 n.4 (4th Cir. 2007), however, it remains for us to decide whether Mellon has stated any claims for relief under New Jersey law based on equitable subrogation, indemnity, and negligent misrepresentation.  We will address each claim in turn.

1.

First, we turn to Mellon's claim against Longwood for equitable subrogation, which permits a person who has discharged another's debt to succeed to the rights and position of the satisfied creditor under certain circumstances.  73 Am. Jur. 2d Subrogation § 5 (2001).  Mellon contends that it should be allowed to assert the warranty claim against Longwood under a theory of equitable subrogation because, in paying Fisher River's state-court judgment, Mellon actually paid the debt of PFG, on whom the U.C.C. also imposes liability for the wrongful registration.  Even assuming that equity applies, however, Mellon, as a subrogee, would stand in the shoes of Fisher River, the subrogor Mellon paid, and not the shoes of PFG.  In that posture, Mellon would be equitably subrogated to Fisher River's claims against PFG, but not PFG's potential warranty claim against Longwood.  Because Mellon chose to sue Longwood rather than PFG, we conclude that Mellon has failed to state a claim for equitable subrogation.

16

2.

We next turn to Mellon's indemnity claims. "[C]ommon law indemnification shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable." Harley Davidson Motor Co. v. Advance Die Casting, Inc., 696 A.2d 666, 671 (N.J. 1997). "The right of indemnity . . . enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97, 110 (N.J. 1960) (internal quotation marks omitted) (indemnity claim by aircraft owners on whom statute imposed strict liability). In other words, to recover indemnification, a party must not be "personally at fault." Stephenson v. R.A. Jones & Co., 510 A.2d 1161, 1164 (N.J. 1986). Here, § 8-404 imposed strict liability on Mellon for registering a transfer without an effective instruction, and Mellon alleges that if it committed any wrong, the wrong was merely "secondary" to Longwood's negligence. Although a court could later conclude after hearing all the evidence that Mellon was in fact negligent in giving Smith the confidential account key and thus was personally at fault (on this issue, we express no opinion), for the

17

purposes of a Rule 12(b)(6) motion to dismiss, Mellon's complaint has stated claims for indemnity.[12]

3.

Finally, to state a claim for negligent misrepresentation, the plaintiff must establish (1) that the defendant negligently made an incorrect statement of past or existing fact, (2) that the plaintiff justifiably relied on it, and (3) that his reliance caused a loss or injury.  <u>Kaufman v. i-Stat Corp.</u>, 754 A.2d 1188, 1195 (N.J. 2000).  In its complaint, Mellon asserts that Longwood is liable for the negligent misrepresentations of its agent Smith.  Rather than argue that Mellon has failed to allege any required element of negligent misrepresentation, Longwood contends that Smith, acting as Longwood's attorney, was an independent contractor and not its agent and that Longwood thus cannot be held liable for Smith's negligent misrepresentations.  Longwood's argument fails, however, because although lawyers are independent contractors, an independent contractor may or not be an agent.  <u>JMB Enters. v. Atl.</u>

---

[12]Longwood argues that Mellon's indemnity claim based on conversion must fail because, as Mellon argued in state court, uncertificated securities are general intangibles that cannot be converted.  Longwood further argues that Mellon may not claim indemnity for conversion of the proceeds because Mellon had no property right in the proceeds to support a conversion claim. Even assuming that uncertificated securities may not be converted, we find that Mellon has established a cognizable claim for indemnity based on Longwood's conversion of the <u>proceeds</u> of the uncertificated securities because it is Longwood's conversion of the proceeds, not Mellon's, that is at issue in the indemnity claim.  Mellon needs no possessory interest in the proceeds to assert its indemnity claim.

18

Employers Ins. Co., 550 A.2d 764, 767 (N.J. Super. Ct. App. Div. 1988).  Whether an agency relationship exists is ordinarily a question of fact within the province of the jury.  Antonio v. Edwards, 74 A.2d 307, 308 (N.J. 1950).  Thus, although a court could find that Mellon's negligence limits or bars its recovery, for purposes of a Rule 12(b)(6) motion to dismiss, Mellon has stated a claim for negligent misrepresentation.


IV.

Based on the foregoing, we find that Mellon has failed to state a claim either for breach of the originator's warranty under Del. Code Ann. tit. 6, § 8-108(e) or for equitable subrogation, and we thus affirm the district court's dismissal of Counts I and III.[13] Because we find that Mellon has indeed stated claims for negligent misrepresentation and indemnity, however, we reverse the district court's dismissal of Counts II, IV, and V.  Accordingly, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[13]Mellon requested summary judgment only on Count I (Breach of Originator's Warranty) as supplemented by Count III (Equitable Subrogation) and by PFG's assignment to Mellon of its claim against Longwood.  Because we conclude that the district court correctly dismissed Mellon's U.C.C. claim as well as its claims based on equitable subrogation and assignment, we, like the district court, conclude that these issues are moot.