**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-6032**

NICHOLAS LEE JONES,

              Plaintiff – Appellant,

      v.

TIMOTHY GROSS, Baltimore City School Police; BALTIMORE CITY BOARD
OF SCHOOL COMMISSIONERS,

              Defendants – Appellees,

      and

BALTIMORE CITY POLICE DEPARTMENT,

              Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
J. Frederick Motz, Senior District Judge.  (1:13-cv-02643-JFM)

Argued:  December 6, 2016                    Decided:  January 13, 2017

Before NIEMEYER, DUNCAN, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge
Niemeyer and Judge Wynn joined.

**ARGUED**: Christopher Thaddeus Longmore, DUGAN, MCKISSICK & LONGMORE, LLC, Lexington Park, Maryland, for Appellant. Amanda Lee Costley, BALTIMORE CITY PUBLIC SCHOOLS, Baltimore, Maryland, for Appellees. **ON BRIEF**: Tammy L. Turner, Chief Legal Counsel, Office of Legal Counsel, BALTIMORE CITY PUBLIC SCHOOLS, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Nicholas Lee Jones brought suit under 42 U.S.C. § 1983 against Officer Timothy Gross,[1] alleging Gross violated his Fourth Amendment rights by using lethal force to effectuate a seizure. The district court granted Gross's motion for summary judgment and Jones appealed. For the reasons that follow, we conclude that Gross's actions were objectively reasonable and he is entitled to qualified immunity on the facts taken in the light most favorable to Jones.[2] Accordingly, we affirm the judgment in favor of Gross, although on different grounds.

I.

A.

The following facts are undisputed.

On the night of October 3, 2010, Jones and two other men entered a Family Dollar Store in Baltimore, Maryland. It was dark and raining; the men wore masks. Jones,

---

[1] Jones also named Baltimore City Board of School Commissioners and Baltimore City Police Department as Defendants under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which permits local governments to be held liable for the constitutional violations of their officials. *Id.* at 690-91. The district court bifurcated the instant claim from the *Monell* claim prior to summary judgment.

[2] Although Gross raised qualified immunity as an affirmative defense in his answer, neither party briefed the issue on appeal. At oral argument, counsel for Gross confirmed that the applicable standard is qualified immunity. "It is well accepted . . . that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below." *Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982).

using a box cutter as a weapon, emptied the cash register. A second robber pointed a gun at two employees and demanded they lay face down on the ground. The third robber acted as a lookout.

Gross, a school police officer, was across the street at a Wendy's restaurant getting dinner at the time of the robbery. As Gross was leaving the restaurant, a civilian informed him that a robbery was in progress and he went to investigate. The store doors were locked, but Gross observed Jones emptying the cash register, the gunman holding an employee hostage, and the lookout. When the lookout saw Gross, he alerted the others to Gross's presence. The lookout unlocked the doors and the robbers prepared to exit the store. The three men--still masked--huddled together with the gunman holding a gun to an employee's head. Jones carried a backpack with the stolen money. Once outside, the gunman pushed the employee to the ground and Jones fled northbound on Harford Road. Before Jones ran the length of the store, he was shot by Gross.

## B.

The principal disagreement in this case centers around the moments just before Gross discharged his weapon.[3] Gross stated in his deposition that he fired in response to an initial shot from one of the robbers. Jones counters that it was impossible for Gross to

---

[3] Jones also insists a dispute exists as to whether he was shot in the back. However, as discussed below, this is not a genuine issue of material fact. Jones points to a discrepancy in Gross's accounts, not a dispute between the parties. Gross stated in his deposition that the men were facing each other when Gross shot him, but later noted in his motion for summary judgment that he shot Jones from behind. The undisputed medical records determine that Jones was shot in the back.

"return fire" because the robber's gun was an inoperable BB gun. Jones concedes, however, that they used the gun with the intent to persuade others that it was real.

## C.

Jones pleaded guilty to armed robbery in the Circuit Court for Baltimore City on June 28, 2012. While incarcerated, Jones filed this 42 U.S.C. § 1983 action against Gross in the United States District Court for the District of Maryland, alleging excessive force in violation of his Fourth Amendment rights. Gross's answer generally denied liability and also asserted various affirmative defenses, including qualified immunity. Gross moved for summary judgment, which the district court granted. This appeal followed.

## II.

On appeal, Jones advances two arguments: (1) the district court used the wrong legal standard and, (2) even under the proper legal standard, whether Gross fired his weapon in response to gunfire from the robbers is a genuine dispute of material fact that precludes summary judgment. Gross counters that this fact is not material and, even if we accept Jones's version of the shooting, the district court properly granted summary judgment on the basis of qualified immunity.

Summary judgment is appropriate when, as a matter of law, no reasonable jury could find for the nonmovant because there are no disputed genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or

5

unnecessary will not be counted." *Id.* at 248 (citation omitted). We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to Jones, the nonmovant. *Id.* at 255.

In considering a qualified-immunity defense, our inquiry at the summary judgment stage is two-fold. We ask (1) whether the officer violated a federal right and (2) whether that right was clearly established such that the officer was on notice that his actions violated the law. *Tolan v. Cotton,* 134 S. Ct. 1861, 1865–66 (2014) (per curiam). We use our discretion as to the order in which to address the two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the officer "did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007).

III.

A.

Jones first argues that we must reverse because the district court used the wrong legal standard. The district court, without citing legal justification, explained the grant of summary judgment in the following paragraph:

> An armed robbery is not completed until the robber or robbers successfully flee the scene and divide up the loot obtained during the robbery. In this case that had not yet occurred at the time the shot was fired. An armed robber runs the risk that he or she will be shot during the course of the robbery. That is a risk that Jones ran.

J.A. 188. The district court erred in so stating. A robbery is complete once a thief has control of, and moves, the goods. *See Harris v. State*, 728 A.2d 180, 188-89 (Md. 1999).

6

The district court also failed to consider applicable governing precedent. The Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985), cautioned that lethal force may not be used simply to stop a suspect from escaping law enforcement. *Id.* at 11. An officer may only use deadly force when "it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. Once a suspect no longer poses a threat, it is no longer reasonable--and therefore no longer constitutional--for law enforcement to use deadly force. *Waterman v. Batton*, 393 F.3d 471, 481-82 (4th Cir. 2005).

However, the district court's error in calculating the duration of an armed robbery does not afford Jones relief. We "review judgments not opinions" and are "entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below." *Catawba Indian Tribe of South Carolina v. City of Rock Hill*, 501 F.3d 368, 372 n.4 (4th Cir. 2007) (per curiam). We hold that, on de novo review of the undisputed facts in the record, it was objectively reasonable for Gross to use lethal force against Jones.

B.

Accepting--as we must--the facts as Jones posits, he cannot demonstrate a violation of a federal right because Gross had probable cause to believe that Jones posed a threat to Gross or others. Claims that law enforcement used excessive force in the course of making an arrest implicate the Fourth Amendment right against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In deciding whether a Fourth

7

Amendment violation occurred, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner*, 471 U.S. at 8 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). We judge an officer's actions by an objective standard, based on the totality of the circumstances. *Graham,* 490 U.S. at 397. "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Garner*, 471 U.S. at 11.

Reasonableness embodies an "allowance for the fact that police officers are often forced to make split-second judgments --in circumstances that are tense, uncertain and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Thus, our perspective is "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. We must also consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Id.*

Here, all factors weigh in Gross's favor. Gross witnessed three masked men robbing a store, one of whom was holding a gun to a hostage's head. It was reasonable for Gross to believe that Jones--fleeing down a public road with a backpack at night and in the rain--was also armed and dangerous.[4] The time between the robbers exiting the

---

[4] Jones urges us to separate the incident into two segments: (1) the moment when the robbers exited the store and (2) when Jones began running away. However, the circumstances here differ from instances where we have separately reviewed the
(Continued)

8

store and the shooting was undeniably brief, as Jones had not run the length of the store before he fell from the shot. Police officers must make swift decisions with limited information. Gross had probable cause to believe that Jones posed a threat to the safety of others while attempting to elude law enforcement. We therefore hold that, on the undisputed facts, Gross's use of lethal force was objectively reasonable and, therefore, Gross is entitled to qualified immunity.[5]

## C.

Jones contends that summary judgment is not warranted because the parties dispute whether Gross fired his weapon in response to a shot from one of the robbers. However, this fact is immaterial because it does not "affect the outcome of the suit under the governing law." *Liberty Lobby, Inc.*, 477 U.S. at 248.

Jones and Gross both agree that, after robbing the store, Jones and the two other men exited while holding an employee hostage. Gross then claims that the gunman pushed the employee to the ground and Gross "saw the muzzle flash" as the robber "took

---

constitutionality of a noncontinuous use of force in a single encounter. *See, e.g.*, *Batton*, 393 F.3d at 481. Jones and the other robbers were in constant motion as they exited the store and, according to Jones's own testimony, he immediately began running after leaving the store. This is not an instance where there was a delay in the officer's actions. Rather, the robbers' exit from the store and Jones's flight were one uninterrupted incident. Moreover, at the time Gross fired his weapon, "the justification for the initial force" had not been "eliminated" and Gross acted reasonably based on the information "possessed . . . at the moment that force [was] employed." *Id.*

[5] Because we hold that Gross did not violate Jones's Fourth Amendment rights, we need not address the second prong of the qualified immunity analysis--whether Gross reasonably believed he was acting within the law. *See Abney*, 493 F.3d at 418.

a shot" at him, at which point Gross returned fire. According to Jones, however, the weapon used in the robbery was an inoperable BB gun, which, even if it was operational, would not have emitted a muzzle flash. But Gross's actions were objectively reasonable regardless of whether he was returning fire. Gross, confronted in the dark and the rain with three masked robbers--one of whom had been holding a gun to a person's head--did not know whether that gun was real or functional. Given the robbers' evident willingness to put others at risk, Gross reasonably presumed that the robbers posed a threat to himself and others.[6]

For the reasons explained above, the judgment of the district court is

AFFIRMED.

---

[6] In an attempt to manufacture a genuine dispute of material fact, Jones also points to contradictions in Gross's account of the events. In Gross's deposition he testified that he was facing Jones when he shot him. However, Gross stated in his motion for summary judgment that he shot Jones in the back. Gross's differing versions do not constitute a genuine dispute. To begin, an issue of material fact is one that "require[s] a jury or judge to solve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) (emphasis added). Here, Jones takes issue with Gross's conflicting accounts. Moreover, the uncontroverted medical evidence indicates that Jones was shot in the back. Therefore, Gross's inconsistency would not preclude summary judgment because evidence in the record supports Jones's statement that he was shot from behind.